# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ERIC LAMONTEE BECK,

      Defendant-Appellant.

UNPUBLISHED
November 17, 2015

No. 321806
Saginaw Circuit Court
LC No. 13-039031-FC

Before: BOONSTRA, P.J., and SAAD and HOEKSTRA, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony firearm), MCL 750.227b. He was acquitted of murder, carrying a dangerous weapon with unlawful intent, and two felony firearm charges. The trial court departed from the recommended sentencing range under the now-advisory legislative guidelines and sentenced defendant as an habitual offender, fourth offense, MCL 769.12, to 240 to 400 months' imprisonment for the felon in possession conviction and to a consecutive sentence of 5 years' imprisonment for the felony firearm conviction. Defendant appeals as of right. We affirm defendant's convictions. However, in light of *People v Steanhouse*, __ Mich App, __; __ NW2d __ (2015), we remand for a *Crosby*[1] hearing.

On June 11, 2013, Hoshea Pruitt was shot to death. Mary Loyd-Deal, a witness who died before trial, saw the shooting and identified defendant as the shooter in her preliminary examination testimony, which was presented to the jury. Loyd-Deal explained that defendant shot Pruitt after a verbal altercation about a woman named Rajeana Drain. The shooting was also witnessed by Jamira Calais. Although Calais could not identify defendant, she testified that she saw a man in a black shirt run across the street after a man in a white shirt was shot three or four times. She saw the man with the black shirt with a gun. The prosecution also presented testimony from Aaron Fuse, who testified that defendant called him a couple of days after Pruitt's death and told Fuse that he had done "something stupid" and shot someone while arguing about a woman.

---

[1] *United States v Crosby*, 397 F3d 103 (CA 2 2005).

Defendant was charged with murder, carrying a dangerous weapon with unlawful intent, felon in possession of a firearm, and three counts of felony-firearm. As noted, the jury convicted defendant of felon in possession of a firearm and one count of felony-firearm, but returned a verdict of not guilty with respect to murder, carrying a dangerous weapon with unlawful intent, and the remaining two counts of felony-firearm. Defendant's recommended minimum sentencing range under the legislative guidelines as a fourth-habitual offender, MCL 769.12, was 22 to 76 months for felon in possession of a firearm. The trial court departed upward from this range and sentenced defendant to 240 to 400 months' imprisonment for felon in possession of a firearm, which was to be served consecutively to a 5 year sentence for felony-firearm. Defendant now appeals as of right.

## I. SENTENCING

On appeal, defendant raises several challenges regarding the sentence imposed. First, defendant contends that the trial court impermissibly engaged in judicial fact-finding that increased the floor of his minimum sentencing range in violation of *Alleyne v United States*, __ US __; 133 S Ct 2151; 186 L Ed 2d 314 (2013). Specifically, defendant asserts that the trial court's scoring of offense variables required the trial court to find facts beyond those established by the jury. Based on this required judicial fact-finding, defendant claims that he is entitled to resentencing.

Defendant failed to raise this judicial fact-finding argument regarding of the scoring of offense variables in the trial court, meaning that his *Alleyne* claim is unpreserved and reviewed for plain error affecting his substantial rights. See *People v Lockridge*, __ Mich __, __; __ NW2d __ (2015), slip op at 30. Recently, in *Lockridge*, the Michigan Supreme Court determined that Michigan's sentencing guidelines violate the Sixth Amendment right to a jury trial insofar as they require a sentencing judge to find facts at sentencing that mandatorily increase the floor of the recommended minimum sentencing range under the legislative guidelines. *Id.*, slip op at 1-2. To remedy this constitutional defect, the *Lockridge* Court held that the sentencing guidelines are now "advisory." *Id.* at 36. However, while declaring the guidelines advisory, the *Lockridge* Court specified that an unpreserved claim of *Alleyne* error was subject to plain error analysis and that, under this standard of review, a defendant who received a minimum sentence that is an upward departure cannot show plain error "because the sentencing court has already clearly exercised its discretion to impose a *harsher* sentence than allowed by the guidelines and expressed its reasons for doing so on the record." *Id.*, slip op at 30 & n 31. "It defies logic that the court in those circumstances would impose a lesser sentence had it been aware that the guidelines were merely advisory." *Id.* Consequently, in this case, because defendant's sentence was an upward departure, he cannot show plain error and he is not entitled to resentencing on the basis of judicial fact-finding regarding offense variables. See *id.*

Next, with respect to sentencing, defendant also argues that the trial court could not consider Pruitt's death when imposing a sentence because the jury found defendant not guilty of homicide. Contrary to these assertions, it is well-settled that a trial court may consider *all* the evidence admitted at trial when determining the appropriate sentence. See *People v Shavers*, 448 Mich 389, 393; 531 NW2d 165 (1995). Indeed, a trial court may consider even acquitted conduct during sentencing, provided that the facts are proven to the judge by a preponderance of the evidence. See *People v Ewing*, 435 Mich 443, 451-452; 458 NW2d 880 (1990) (opinion by

BRICKLEY, J.); *id.* at 473 (opinion by BOYLE, J.); *People v Compagnari*, 233 Mich App 233, 236; 590 NW2d 302 (1998). Consequently, in this case, we see nothing improper in the trial court's consideration of defendant's role in Pruitt's death when crafting an appropriate sentence. The evidence introduced at trial included Loyd-Beal's identification of defendant in her preliminary examination testimony along with other evidence establishing defendant's identity as the shooter by a preponderance of the evidence. Thus, the trial court was free to consider defendant's responsibility for Pruitt's death as a circumstance surrounding defendant's conduct when imposing the sentence for defendant's felon in possession conviction.

Regarding the sentence imposed, defendant also contends that the trial court failed to justify the departure with substantial and compelling reasons. After defendant filed his appellate brief in the present case, our Supreme Court reached a decision in *Lockridge*, which, as described above, rendered the previously mandatory sentencing guidelines "only advisory." *Lockridge*, slip op at 36. Relevant to defendant's current arguments on appeal, in holding that the guidelines were now "advisory," the Court specifically struck down the requirement that a trial court articulate substantial and compelling reasons to depart from the guidelines range as previously required under MCL 769.34(3). *Lockridge*, slip op at 29. Consequently, following *Lockridge*, we no longer consider whether a trial court articulated substantial and compelling reason to justify a departure; rather, a departure sentence will be reviewed on appeal for "reasonableness." *Id.* Sentencing courts must still articulate justification for the departure sentence in order to facilitate appellate review; but resentencing will only be required when a sentence is determined to be "unreasonable." *Id.*

The *Lockridge* Court did not elaborate on the meaning of "reasonableness." The phrase was, however, recently considered by a panel of this Court. Specifically, in *People v Steanhouse*, this Court considered two possible approaches to understanding "reasonableness," and concluded that *Lockridge*'s adoption of a reasonableness standard heralded a return to the proportionality principles in place before the enactment of the legislative guidelines as set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990) and its progeny. See *People v Steanhouse*, __ Mich App __, __; __ NW2d __ (2015), slip op at 23-24. Under this standard, we apply a "'principle of proportionality' test in order to determine whether a trial court abuses its discretion in imposing a sentence." *Id.* at 23, citing *Milbourn*, 435 Mich at 634-636.

The principle of proportionality requires a trial court to impose a sentence that takes "into account the nature of the offense and the background of the offender." *Id.*, quoting *Milbourn*, 435 Mich at 651. In this context, the sentencing guidelines serve as an advisory "barometer," that assists the trial court in placing a given case on the "continuum from the least to the most threatening circumstances." *Id.*, quoting *Milbourn*, 435 Mich at 656-657. The trial court has discretion to depart from the sentencing guidelines when the trial court concludes that the guidelines are disproportionate to the seriousness of the crime. *Id.*, citing *Milbourn*, 435 Mich at 656-657. The court may consider a variety of factors when sentencing, including among others, (1) the seriousness of the offense; (2) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation, and (3) factors that were inadequately considered by the guidelines in a particular case. *Id.* at 24 (citation omitted).

On appeal, we review the trial court's sentencing decision for an abuse of discretion, and a trial court will be said to have abused its discretion "if that sentence violate[d] the principle of proportionality, which require[d] sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id.* at 23, quoting *Milbourn*, 435 Mich at 636.

> Where there is a departure from the sentencing guidelines, an appellate court's first inquiry should be whether the case involves circumstances that are not adequately embodied within the variables used to score the guidelines. A departure from the recommended range in the absence of factors not adequately reflected in the guidelines should alert the appellate court to the possibility that the trial court has violated the principle of proportionality and thus abused its sentencing discretion. Even where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality. [*Id.*, quoting *Milbourn*, 435 Mich at 659–660.]

In this case, the trial court sentenced defendant before the decisions in *Lockridge* and *Steanhouse* were issued. Consequently, the trial court articulated substantial and compelling reasons for departing, rather than focusing on the "reasonableness" of the sentence imposed. In these circumstances, the *Steanhouse* Court determined that a remand for a *Crosby* hearing is the appropriate remedy. *Steanhouse*, slip op at 25. Resentencing is not necessarily required incident to a *Crosby* hearing; rather, at a *Crosby* hearing the sentencing court, now fully informed of the new sentencing regime, determines whether or not to resentence. *Lockridge*, slip op at 33-36, citing *Crosby*, 397 F2d 117-118. In other words, "the purpose of a *Crosby* remand is to determine what effect *Lockridge* would have on the defendant's sentence, so that it may be determined whether any prejudice resulted from the error." *People v Stokes*, __ Mich App __, __; __ NW2d __ (2015), slip op at 11. Under the new sentencing regime now in place, a defendant may face a more severe sentence at resentencing and, for this reason, a defendant is provided with an opportunity to avoid resentencing by promptly notifying the trial judge that resentencing will not be sought. *Id.* at 11-12. Consequently, in keeping with *Steanhouse*, we remand this case for a *Crosby* hearing following the procedures set forth in *Lockridge*. *Steanhouse*, slip op at 25. Defendant may elect to forego resentencing and must promptly notify the trial court of this decision. *Id.* "If notification is not received in a timely manner, the trial court shall continue with the *Crosby* remand procedure as explained in *Lockridge*." *Id.* (citation and quotation marks omitted).

## II. DEFENDANT'S STANDARD 4 BRIEF

In a Standard 4 brief, defendant raises three additional arguments. First, relying on MCL 769.11b, defendant argues that he was denied credit for 268 days served before his convictions. Contrary to defendant's argument, the judgment of sentence clearly indicates that he was credited with 268 days in relation to his felony-firearm conviction. Defendant appears to believe that he was also entitled to this credit in relation to his felon in possession sentence or that, alternatively, the credit should have instead been applied to his felon in possession sentence rather than his felony-firearm sentence. But, as noted, defendant's sentences are consecutive, not concurrent, and in these circumstances the jail credit was properly applied only to the felony-

firearm sentence which, according to the judgment of sentence, is to precede his felon in possession sentence. See *People v Cantu*, 117 Mich App 399, 402-404; 323 NW2d 719 (1982).

Second, defendant argues that the evidence was insufficient to sustain his convictions beyond a reasonable doubt. Specifically, defendant contends that the prosecution presented no evidence to establish that defendant was present at the scene or that he possessed a gun. Further, defendant claims that, because the jury found him not guilty of murder, they could not convict him of felon in possession or felony firearm. Defendant also argues that trial counsel provided ineffective assistance by failing to move for a directed verdict or a new trial.

We review de novo a challenge to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). When determining whether the prosecutor presented sufficient evidence to sustain a conviction, we consider the evidence in a light most favorable to the prosecutor to ascertain whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). Direct evidence as well as circumstantial evidence and reasonable inferences arising therefrom can constitute satisfactory proof of the elements of a crime. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). It is for the jury to determine witness credibility and to resolve any inconsistencies in the testimony; and, this Court will not interfere with the jury's role as fact-finder. *People v Harverson*, 291 Mich App 171, 175, 179; 804 NW2d 757 (2010). Rather, "a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Nowack*, 462 Mich at 400.

In this case, defendant does not dispute that he was a felon ineligible to possess a firearm, and he does not dispute that someone at the scene possessed a firearm. Instead, defendant essentially argues that there was no evidence that he was identified as present during the crime or as being the person in possession of the gun. Defendant is correct in his assertion that identity is an element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). However, contrary to defendant's arguments, there was sufficient evidence to establish his identity as the individual in possession of a gun at the scene. Calais, who was behind a turquoise car, saw an unidentified man shooting a gun before running away. Loyd-Deal stated that she saw defendant get out of a car that was the same color as the one in front of Calais. Loyd-Deal identified defendant as the man having a heated argument with Pruitt regarding Drain. And, most notably, Loyd-Deal testified that, after she heard a shot fired, she went to her window and she saw defendant shoot Pruitt three times. Indeed, Loyd-Deal testified that she saw defendant with a gun more than once during the incident. Fuse testified that defendant called him a couple days after Pruitt died and that, consistent with Loyd-Deal's description of events, defendant told Fuse that he did something stupid and shot "someone" while arguing with a man over a girl. Thus, it was reasonable for the jury to conclude from the evidence presented that defendant was at the scene and in possession of a gun. Although on appeal defendant highlights inconsistencies in the evidence and in Loyd-Deal's testimony in particular, these issues were for the jury to resolve.[2] See *Harverson*, 291 Mich App at 175, 179. Viewed in a light most favorable to the

---

[2] There is also no merit to defendant's assertion that his convictions were not supported by sufficient evidence simply because the jury returned a not guilty verdict with respect to open

prosecution, the direct and circumstantial evidence, as well as all reasonable inferences that may be drawn, was sufficient to support defendant's convictions beyond a reasonable doubt. See *Nowack*, 462 Mich at 400.

Insofar as defendant asserts that trial counsel provided ineffective assistance by failing to move for a directed verdict or a new trial, his claims are without merit. To establish a claim of ineffective assistance of counsel a defendant must show "(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014) (quotation marks and citations omitted). The effective assistance of counsel is presumed, and the defendant bears the heavy burden of proving otherwise. *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). Counsel is not considered ineffective for failing to make meritless arguments or for failing to pursue a futile motion. *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003); *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

In this case, defendant argues that his trial counsel provided ineffective assistance because he did not move for a directed verdict. However, such a motion would have been futile because the evidence discussed above, along with the physical evidence that Pruitt died of a homicide after he was shot at close range, provided a basis for a reasonable juror to convict defendant of the crimes for which he was charged, including murder. Counsel was not ineffective for failing to make a futile motion. *Riley*, 468 Mich at 142.

Finally, defendant argues that the trial court abused its discretion by admitting Loyd-Deal's preliminary examination testimony and her 911 call at trial.[3] Specifically, defendant

---

murder. Although it is not entirely clear from defendant's argument, it appears to be his contention that there is some inconsistency in the verdicts that renders his convictions infirm. But, even supposing that there was some inconsistency in the verdicts, this would not entitle defendant to relief because "inconsistent verdicts within a single jury trial are permissible." *People v Wilson*, 496 Mich 91, 100; 852 NW2d 134 (2014). Moreover, in this case, the jury's verdicts are not necessarily inconsistent. The jury could have found credible Loyd-Deal's testimony that defendant was present with a gun while at the same time they might have had reasonable doubts about Loyd-Deal's statement that she saw defendant shoot Pruitt given that she also testified that she was in the kitchen on the phone when she initially heard shots fired.

[3] Insofar as defendant challenges the admission of Loyd-Deal's 911 call, defendant waived any error in this regard because it was defense counsel who introduced Loyd-Deal's 911 call into evidence at trial. "Defendant may not assign error on appeal to something that his own counsel deemed proper at trial." *People v Barclay*, 208 Mich App 670, 673; 528 NW2d 842 (1995). Further, decisions regarding what evidence to present are matters of trial strategy, *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008), and it is clear that counsel was not ineffective for introducing this evidence because counsel used the 911 call to discredit Loyd-Deal's testimony by asserting that she did not identify defendant during the 911 call as the shooter when events were "still fresh in her mind" and that she instead "developed the story about [defendant] after the fact." We need not consider the 911 call further.

-6-

categorizes the evidence as inadmissible hearsay, he contends that Loyd-Deal was lacking the requisite mental capacity when she testified at the preliminary examination due to her poor health and, relying on MRE 403, defendant contends that this evidence was irrelevant and unfairly prejudicial. Defendant also argues that his trial counsel was ineffective in failing to object to the admission of this evidence or to file a motion in limine for the exclusion of this evidence.

We review a trial court's decision to admit evidence for an abuse of discretion. *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Id.* at 722-723. Preliminary questions of law, including whether a rule of evidence precludes admissibility of evidence, are reviewed de novo. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). A court necessarily abuses its discretion when it admits evidence that is inadmissible as a matter of law. *Id.*

In this case, contrary to defendant's arguments, Loyd-Deal's testimony was plainly relevant. She was present at the scene, she observed defendant with a gun, and she testified that she saw defendant shoot Pruitt three times. Her testimony thus constituted evidence making it more probable that defendant was in possession of a gun and that he killed Pruitt. Because Loyd-Deal's testimony was relevant to facts of consequence, it was generally admissible. See MRE 401; MRE 402. Further, although Loyd-Deal's preliminary examination testimony constituted hearsay, see MRE 801, it was nonetheless admissible because Loyd-Deal was unavailable at trial and she testified at the preliminary examination, during which defendant had an opportunity and similar motive to develop her testimony on cross examination. See MRE 804(a)(4); MRE 804(b)(1).

Nonetheless, defendant claims Loyd-Deal's testimony was inadmissible because she was mentally incompetent. In support of this argument, defendant notes that Loyd-Deal testified during the preliminary examination from a hospital bed in the courtroom. Although it would appear that Loyd-Deal was in poor physical health at the time of the examination, and in fact died shortly thereafter, it is nonetheless true that "a witness is presumed to be competent to testify." *People v Flowers*, 222 Mich App 732, 737-738; 565 NW2d 12 (1997). Under MRE 601, "[u]nless the court finds after questioning a person that the person does not have sufficient physical or mental capacity or sense of obligation to testify truthfully and understandably, every person is competent to be a witness except as otherwise provided in these rules." See also *People v Breck*, 230 Mich App 450, 457; 584 NW2d 602 (1998). There is no indication that Loyd-Deal lacked this capacity and the mere fact of her poor health does not, on its own, render her incompetent within the meaning of MRE 601.[4]

---

[4] Insofar as defendant claims counsel should have objected to Loyd-Deal's testimony on this basis, we note that it is defendant's burden to establish the factual predicate for his claim. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). Without evidence to support the assertion that Loyd-Deal was incompetent within the meaning of MRE 601, there is no factual support for defendant's claim that counsel provided ineffective assistance of counsel by failing to

In addition, defendant argues that her testimony should have been excluded because it was unduly prejudicial and confusing. Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. MRE 403. See also *People v Musser*, 494 Mich 337, 356; 835 NW2d 319 (2013). Unfair prejudice exists when there is a tendency that the marginally probative evidence will be given undue or preemptive weight by the jury. *People v Mardlin*, 487 Mich 609, 627; 790 NW2d 607 (2010). We have no such concerns in the present case. Here, the testimony had significant probative value as substantive evidence of the crimes for which defendant was charged. It was certainly prejudicial to the extent that the jury could have relied on it to identify defendant as the perpetrator of the crimes; but, in this regard, "[a]ll relevant evidence is prejudicial," and we see nothing *unfairly* prejudicial in this evidence which would require its exclusion. See *People v McGhee*, 268 Mich App 600, 613-614; 709 NW2d 595 (2005). Nor can we discern any basis for concluding that the evidence was so confusing as to substantially outweigh the significant probative value of the evidence. Consequently, the trial court did not abuse its discretion by admitting Loyd-Deal's testimony.

Having concluded that the trial court did not abuse its discretion by admitting Loyd-Deal's testimony, we also reject defendant's assertion that his trial counsel was ineffective for failing to object to the admission of this testimony based on the various reasons asserted by defendant on appeal. First, the decision to object is typically considered a matter of trial strategy, *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004), and in this case the record shows that counsel did raise objections to portions of Loyd-Deal's testimony and that counsel succeeded in having some of her testimony redacted before it was presented to the jury. Second, overall, the testimony that was ultimately admitted was admissible for the reasons discussed *supra* and counsel cannot be considered ineffective for failing to make meritless objections or for failing to pursue a futile motion in limine. See *Riley*, 468 Mich at 142; *Ericksen*, 288 Mich App at 201.

We affirm defendant's convictions, but remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Henry William Saad
/s/ Joel P. Hoekstra

---

object to her testimony on this basis. Thus, defendant's ineffective assistance of counsel claim must fail. See *Carbin*, 463 Mich at 600-601.