# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DWAYNE EDMUND WILSON,

        Defendant-Appellant.

UNPUBLISHED
May 10, 2016

No. 324856
Macomb Circuit Court
LC No. 2009-002637-FC

Before: MURPHY, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and two counts of unlawful imprisonment, MCL 750.349b. Defendant was sentenced to 10 years' imprisonment for the felony-firearm conviction as a third felony-firearm offender, and 100 to 180 months' imprisonment for the unlawful imprisonment convictions.[1] We affirm defendant's convictions but remand for correction of the judgment of sentence to reflect a term of five years' imprisonment for defendant's felony-firearm conviction and for reconsideration of defendant's unlawful imprisonment sentences.

Defendant first argues that he was denied his right to a speedy trial. We disagree. "The determination whether a defendant was denied a speedy trial is a mixed question of fact and law. The factual findings are reviewed for clear error, while the constitutional issue is a question of law subject to review de novo." *People v Waclawski*, 286 Mich App 634, 664; 780 NW2d 321 (2009) (citations omitted).

"[A] defendant's right to a speedy trial is guaranteed by the United States and Michigan Constitutions." *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013), citing US Const, Am VI; Const 1963, art 1, § 20. See also MCL 768.1 (codifying the right to a speedy trial). No fixed number of days of delay exists after which the right to a speedy trial is violated. *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). "Whether an accused's right to a

---

[1] The jury found defendant not guilty of the additional charges of second-degree murder, MCL 750.317, and assault with intent to do great bodily harm, MCL 750.84.

-1-

speedy trial is violated depends on consideration of four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Rivera*, 301 Mich App at 193 (quotation marks omitted). "Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury." *Williams*, 475 Mich at 262. "[A] presumptively prejudicial delay triggers an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial." *Id*. (quotation marks omitted). "In assessing the reasons for delay, this Court must examine whether each period of delay is attributable to the defendant or the prosecution." *Waclawski*, 286 Mich App at 666. Delays that inhere in the court system, such as docket congestion, are technically attributable to the prosecution but are given a neutral tint and assigned only minimal weight in determining whether a speedy trial violation occurred. *Williams*, 475 Mich at 263.

We note that, before trial, defendant filed in federal district court a habeas corpus petition raising his speedy trial claim. See *Wilson v Michigan*, unpublished order of the United States District Court for the Eastern District of Michigan, entered July 17, 2014 (Docket No. 14-12490), 2014 WL 3543305. On July 17, 2014, the federal district court dismissed defendant's petition and reasoned, in relevant part, that much of the delay was due to interlocutory appeals and that defendant's case had been steadily progressing in state court. *Id*. at 2-3.

On September 8, 2014, the trial court in the present case denied defendant's motion to dismiss for violation of his right to a speedy trial. In addressing the reasons for the delay, the trial court summarized the relevant proceedings as follows:

> On September 6, 2011, the Supreme Court denied the prosecutor's application for leave to appeal the Court of Appeals's May 10, 2011 decision [reversing defendant's earlier convictions in this case from a 2009 trial]. Moreover, on September 9, 2011, the Circuit Court file was returned from the Supreme Court. A pre-trial conference was held in November 2011. The Circuit Court denied defendant's prior motions to dismiss for violation of the 180-day trial rule on February 16, 2012 and March 1, 2012. Defendant filed a delayed application for leave to appeal the denial of his original motion to dismiss, which was denied by the Court of Appeals on April 18, 2012. On July 6, 2012, the Circuit Court granted defendant's motion to dismiss the felony murder charge. Thereafter, on July 16, 2012, the Court of Appeals stayed this matter pending appeal. On August 13, 2012, the trial court entered an order placing this matter on the inactive docket due to the stay. That order stated that "[i]t appears that no further progress in this cause will be possible because of [the stay]."

> Prior to the stay, defendant filed numerous motions, including, but not limited [to], the motions to dismiss for violation of the 180-day trial rule, a motion for [sic] dismiss for failure to arraign, discovery motions, a motion for bond reduction, a request for an investigator, for additional scientific experts, and to dismiss the felony murder charge. Further, on April 18, 2012, the Court granted defendant's motion to adjourn the April 24, 2012 trial date to July 17, 2012 to allow defendant time for trial preparation.

On November 15, 2012, the Court of Appeals reversed the Circuit Court's decision. The Supreme Court issued its decision on June 18, 2014 and its corresponding order reversing the Court of Appeals's decision and remanding the matter to this Court for further proceedings was entered on July 16, 2014. Further, on July 24, 2014, these proceedings were removed from the Circuit Court's inactive docket. On July 30, 2014, the Circuit Court received the Supreme Court's order and the file was returned from the Supreme Court. Shortly thereafter, on August 4, 2014, the Court took defendant's pending motions under advisement. On August 21, 2014, a pre-trial conference was held. A pre-trial conference/hearing is set for September 8, 2014.

Thus, this Court was precluded from proceeding with this matter pending appeal and acted promptly after the Supreme Court's decision was entered. It should be noted that the federal court's decision, as discussed above, primarily attributed the delay to interlocutory appeals and noted that this case has been steadily progressing in state court. Further, some of the delay can be attributed to defendant inasmuch as he filed numerous motions and requested that the trial date be adjourned prior to the stay. Under the totality of circumstances, this Court sees no evidence that the prosecution is substantially to blame for the delays in this case or that they were unwarranted. [Quotation marks and citation omitted; alterations in original.]

The trial court noted that the prosecutor did not dispute that defendant had asserted his right to a speedy trial numerous times throughout the proceedings. The trial court found that defendant's general allegations of prejudice were insufficient to establish that he was denied his right to a speedy trial. Balancing the factors, the trial court concluded that defendant's speedy trial right was not violated.

We agree with the trial court's analysis. First, with respect to the length of delay, the parties agree that the relevant period of delay began on September 6, 2011, which was the date that our Supreme Court denied leave to appeal, see *People v Wilson*, 490 Mich 861 (2011) (*Wilson II*), from this Court's reversal of defendant's earlier convictions, see *People v Wilson*, unpublished opinion per curiam of the Court of Appeals, issued May 10, 2011 (Docket No. 296693), pp 1-3 (*Wilson I*), and ended on September 24, 2014, the date that defendant's second trial began. Because the delay exceeded 18 months, prejudice is presumed and an inquiry must be made into the other factors in order to determine whether a speedy trial violation occurred. See *Williams*, 475 Mich at 262.

Regarding the reasons for delay, it is undisputed that the vast majority of delay, approximately two years, is attributable to an interlocutory appeal arising from the dismissal of a charge of first-degree felony murder, MCL 750.316(1)(b). The trial court dismissed the felony murder charge on July 6, 2012. On July 12, 2012, the prosecutor filed an interlocutory application for leave to appeal in this Court. On July 16, 2012, this Court granted the prosecutor's application for leave to appeal and stayed further proceedings in the trial court pending the resolution of the appeal. *People v Wilson*, unpublished order of the Court of Appeals, entered July 16, 2012 (Docket No. 311253). On November 15, 2012, this Court issued an opinion reversing the trial court's order, reinstating the felony murder charge, and remanding

the case to the trial court for further proceedings. *People v Wilson*, unpublished opinion per curiam of the Court of Appeals, issued November 15, 2012 (Docket No. 311253), pp 1-3 (*Wilson III*), reversed 496 Mich 91 (2014). On January 9, 2013, defendant filed an application for leave to appeal in our Supreme Court. On May 24, 2013, our Supreme Court granted defendant's application for leave to appeal. *People v Wilson*, 494 Mich 853 (2013). On June 18, 2014, our Supreme Court issued an opinion holding that double jeopardy precluded recharging defendant with felony murder because he had previously been acquitted of the predicate felony; the Supreme Court therefore reversed this Court's decision and remanded the case to the trial court for further proceedings. *People v Wilson*, 496 Mich 91, 108; 852 NW2d 134 (2014) (*Wilson IV*). Our Supreme Court entered its corresponding order returning the matter to the trial court on July 16, 2014.

The two-year period of delay related to the interlocutory appeal is not weighed in favor of defendant's speedy trial claim.

> Given the important public interests in appellate review, it hardly need be said that an interlocutory appeal by the Government ordinarily is a valid reason that justifies delay. In assessing the purpose and reasonableness of such an appeal, courts may consider several factors. These include the strength of the Government's position on the appealed issue, the importance of the issue in the posture of the case, and – in some cases – the seriousness of the crime. For example, a delay resulting from an appeal would weigh heavily against the Government if the issue were clearly tangential or frivolous. Moreover, the charged offense usually must be sufficiently serious to justify restraints that may be imposed on the defendant pending the outcome of the appeal. [*United States v Loud Hawk*, 474 US 302, 315-316; 106 S Ct 648; 88 L Ed 2d 640 (1986) (citations omitted).]

Although the prosecutor did not ultimately prevail in our Supreme Court on the appealed issue concerning whether double jeopardy barred retrial on the felony murder charge, the prosecutor's position was not clearly tangential or frivolous. Indeed, the prosecutor's argument was sufficiently strong that this Court ruled in favor of the prosecutor, see *Wilson III*, unpub op at 1-3, and three dissenting justices of our Supreme Court also agreed with the prosecutor's position, see *Wilson IV*, 496 Mich at 132 (MARKMAN, J., dissenting). Defendant has not demonstrated that the prosecutor acted in bad faith or had a dilatory purpose in pursuing the interlocutory appeal. See *Loud Hawk*, 474 US at 316 (noting that the defendant had made no showing of bad faith or dilatory purpose on the part of the prosecutor). The issue whether double jeopardy barred retrial on the felony murder charge was an important issue in the posture of the case given that it was the most serious charge being pursued and the trial court's ruling prevented prosecution on that charge. Likewise, the seriousness of the crime of felony murder is beyond dispute.

It is also notable that the appellate delay during the period from this Court's issuance of its opinion on November 15, 2012, until the case returned to the trial court in July of 2014, is due to defendant's decision to pursue in our Supreme Court an interlocutory appeal of this Court's decision.

> In that limited class of cases where a pretrial appeal by the defendant is appropriate, delays from such an appeal ordinarily will not weigh in favor of a defendant's speedy trial claims. A defendant with a meritorious appeal would bear the heavy burden of showing an unreasonable delay caused by the prosecution in that appeal, or a wholly unjustifiable delay by the appellate court. [*Loud Hawk*, 474 US at 316 (citation omitted).]

Defendant has not shown that the prosecutor caused an unreasonable delay or that there was a wholly unjustifiable delay by our Supreme Court. Accordingly, the delay attributable to the interlocutory appeal is not weighed in favor of defendant's speedy trial claim.

Moreover, most of the period of delay that preceded and followed the interlocutory appeal is either attributable to defendant or given only minimal weight because of delays inherent in the court system. The prosecutor concedes that there was a two-week adjournment at the prosecutor's request and a one-month delay attributable to the trial court's unavailability and the reassignment of the initial trial judge to the Family Division of the Macomb Circuit Court. But by far most of the delays appear to be attributable to motions or requests by defendant.

In particular, at a November 15, 2011 pretrial conference, defendant, who was then represented by an attorney, requested through defense counsel a new pretrial conference in order to have more time to review discovery material and to prepare defense motions. At a December 13, 2011 pretrial conference, defense counsel again said that he was in the process of reviewing discovery items and would need to review some transcripts that the prosecutor was supposed to provide; defense counsel indicated that defendant wanted counsel to look into a legal issue and suggested coming back in January to set a trial date and address any pretrial motions. At a January 19, 2012 hearing, defendant asked the trial court to appoint him a new attorney and indicated that otherwise defendant might represent himself; the trial court agreed to appoint a new lawyer for defendant. At a February 16, 2012 pretrial conference, it was revealed that defendant was unhappy with the new attorney that the court had appointed for him, and defendant indicated that he wished to represent himself; defendant also indicated that he wanted to file a motion for further discovery and requested appointments of a private investigator, an independent medical examiner, and a crime reconstructionist to assist in the defense. At a March 1, 2012 pretrial hearing, the trial court asked defendant if he would be ready for trial the following week or the week after that, and defendant indicated that he was not ready for trial at those times; defendant also indicated that he planned to file a motion to remove the trial judge. At an April 18, 2012 pretrial hearing, defendant requested an adjournment of at least 90 days so he could have more time to prepare for trial. At defendant's request, on April 18, 2012, the trial court adjourned the trial from April 24, 2012 to July 17, 2012. At a May 4, 2012 pretrial hearing, defendant again pursued a motion regarding further discovery and requested bond. Defendant also pursued various motions at hearings held on July 9, 2012; July 12, 2012; July 21, 2014; August 21, 2014; and September 8, 2014.

In short, the record reflects that the bulk of the delay before and after the interlocutory appeal is attributable to defendant given his numerous motions, requests for adjournment, and requests for new appointed counsel. Any remaining adjournments appear to be inherent to the court system and thus, while technically attributable to the prosecution, are assigned only minimal weight. *Williams*, 475 Mich at 263.

Next, as the trial court noted, it is undisputed that defendant made numerous assertions of his speedy trial right.

Defendant did not suffer any prejudice to his defense. "Prejudice to the defense is the more serious concern [than prejudice to the person], because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Williams*, 475 Mich at 264 (quotation marks removed). Defendant concedes on appeal that there are no specific witnesses that have become unavailable and no specific documents that have been lost as a result of the delay. See *Waclawski*, 286 Mich App at 669 (concluding that the defendant's defense was not prejudiced where there was "no indication that a potential defense witness was lost or that other exculpatory evidence was misplaced during the delay."). Defendant contends that he has suffered prejudice to his person because he endured anxiety from facing a murder charge of which, defendant claims, he has now been cleared. The mere fact that defendant was not ultimately convicted of murder does not establish that his incarceration pending trial on murder and other charges comprised unfair prejudice to his person. Anxiety alone is insufficient to establish a speedy trial violation. *People v Gilmore*, 222 Mich App 442, 462; 564 NW2d 158 (1997). Defendant was ultimately convicted of three felonies and has received credit for the time that he was incarcerated before trial.[2]

We conclude that, although the three-year delay is presumptively prejudicial and defendant asserted his speedy trial right, the reasons for delay do not weigh in favor of his claim, and his ability to prepare a defense was not prejudiced. Therefore, defendant's right to a speedy trial was not violated. See *Waclawski*, 286 Mich App at 669 (finding no speedy trial violation where, although the length of the delay was presumptively prejudicial and the defendant asserted his speedy trial right, the defendant's ability to prepare a defense was not prejudiced and the reasons for delay weighed against the defendant).

Defendant next argues that the trial court erred in sentencing him to 10 years' imprisonment as a third felony-firearm offender. We agree. This issue presents a question of statutory interpretation, which is reviewed de novo. *People v Gardner*, 482 Mich 41, 46; 753 NW2d 78 (2008).

---

[2] Defendant alludes to the fact that, after this Court reversed his earlier convictions in 2011, he remained incarcerated with the Department of Corrections and was not transferred to the Macomb County Jail until March of 2014. If defendant is suggesting that this fact somehow weighs in favor of his speedy trial claim by showing prejudice to his person, then his argument is disingenuous. At pretrial hearings in 2012, the prosecutor repeatedly urged that defendant be transferred from the Department of Corrections to the Macomb County Jail, and defendant emphatically resisted this suggestion, insisting that he wished to remain in a Department of Corrections facility because it had a better law library than the Macomb County Jail. Defendant repeatedly opposed any efforts to move him from the Department of Corrections facility to the Macomb County Jail. In any event, defendant cites no authority indicating that his incarceration in the Department of Corrections rather than in the Macomb County Jail affects the determination whether he suffered prejudice to his person for the purpose of a speedy trial claim.

MCL 750.227b(1) provides:

> A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except a violation of section 223, 227, 227a, or 230, is guilty of a felony and shall be punished by imprisonment for 2 years. Upon a second conviction under this subsection, the person shall be punished by imprisonment for 5 years. Upon a third or subsequent conviction under this subsection, the person shall be punished by imprisonment for 10 years.

In *People v Stewart*, 441 Mich 89, 95; 490 NW2d 327 (1992), our Supreme Court held "that a defendant may be convicted of felony-firearm (third offense) if the third offense is preceded by two convictions of felony-firearm, and both prior felony-firearm convictions have arisen from separate criminal incidents." In requiring that the two prior felony-firearm convictions arise from separate criminal incidents, the Supreme Court in *Stewart* relied in relevant part on its earlier opinion in *People v Preuss*, 436 Mich 714; 461 NW2d 703 (1990), overruled by *People v Gardner*, 482 Mich 41 (2008), which had interpreted the general habitual offender statutes. See *Stewart*, 441 Mich at 93-95. The Supreme Court noted in *Stewart*: "We said in *Preuss* that the habitual offender statute 'requires only that the fourth offense be preceded by three convictions of felony offenses, and that each of those three predicate felonies arise from separate criminal incidents.' " *Stewart*, 441 Mich at 94, quoting *Preuss*, 436 Mich at 717.

In *Gardner*, 482 Mich at 44, our Supreme Court overruled *Preuss* because the holding in *Preuss* contradicted the language of the general habitual offender statutes. Summarizing its decision, the Supreme Court stated in *Gardner*:

> Michigan's habitual offender laws clearly contemplate counting *each* prior felony conviction separately. The text of those laws does not include a same-incident test. This Court erred by judicially engrafting such a test onto the unambiguous statutory language. Accordingly, we overrule *Preuss* . . . . [*Gardner*, 482 Mich at 68.]

Our Supreme Court in *Gardner* did not interpret the felony-firearm statute or overrule *Stewart*.

In deciding to sentence defendant to 10 years' imprisonment as a third felony-firearm offender, the trial court reasoned that, because *Stewart* relied on *Preuss*, and because *Preuss* was overruled in *Gardner*, the separate criminal incident requirement in *Stewart* is no longer controlling. But the trial court and this Court are bound to follow *Stewart* unless and until it is overruled by our Supreme Court. "[O]nly [our Supreme] Court has the authority to overrule one of its prior decisions. Until [our Supreme] Court does so, all lower courts and tribunals are bound by that prior decision and must follow it even if they believe that it was wrongly decided or has become obsolete." *Paige v Sterling Hts*, 476 Mich 495, 524; 720 NW2d 219 (2006). Although the rationale for the holding in *Stewart* has arguably been called into question by *Gardner*, the fact remains that *Gardner* did not overrule *Stewart* or interpret the felony-firearm statute that was addressed in *Stewart*. Therefore, only the Supreme Court can decide whether *Stewart* should, like *Preuss*, be overruled. *Paige*, 476 Mich at 524.

In this case, it is undisputed that defendant's two prior felony-firearm convictions arose from the same criminal incident, which occurred on January 4, 1997. Because defendant's two prior felony-firearm convictions did not arise from separate criminal incidents, *Stewart* precludes sentencing him as a third felony-firearm offender. See *Stewart*, 441 Mich at 95.

We conclude that the proper remedy is to remand the case to the trial court for correction of the judgment of sentence to reflect a lesser five-year term for defendant's felony-firearm conviction as a second offender. See MCL 750.227b(1) (providing for a five-year term of imprisonment upon a second felony-firearm conviction). A full resentencing hearing is not necessary because the required modification is ministerial. The trial court's error was not a product of inaccurate information but was due to a misunderstanding of the law; the appropriate sentence for this offense is not discretionary; and no due process concerns are implicated. Cf., generally, *People v Miles*, 454 Mich 90, 100-101; 559 NW2d 299 (1997). Indeed, defendant does not request a full resentencing but instead asks for a remand with instructions to the trial court to amend the judgment of sentence to correct the felony-firearm sentence. Nonetheless, if the trial court on remand determines that resentencing is required for the unlawful imprisonment convictions, as discussed later in this opinion, then the trial court may include the felony-firearm resentencing in that hearing, even though, as discussed, the appropriate sentence for felony-firearm is not discretionary.

Defendant next argues that the trial court made a scoring error in assessing points for Offense Variables (OVs) 3 and 7. We disagree. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citations omitted). "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a [presentence investigation report]." *People v Thompson*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 318128); slip op at 3.

OV 3 addresses physical injury to the victim. MCL 777.33(1); *People v Laidler*, 491 Mich 339, 343; 817 NW2d 517 (2012). A trial court must assess 100 points under OV 3 "if death results from the commission of a crime and homicide is not the sentencing offense." MCL 777.33(2)(b); *Laidler*, 491 Mich at 343. For the purpose of OV 3, a victim includes any person harmed by the defendant's criminal actions, *id*. at 349 n 6; a victim is not limited to the victim of the charged offense, *People v Albers*, 258 Mich App 578, 593; 672 NW2d 336 (2003). To assess points under OV 3, factual causation is required, in that the victim would not have died but for the defendant's criminal conduct. *Laidler*, 491 Mich at 345. The defendant's actions need not constitute the only cause of the death. *Id*. at 346.

"Offense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable." *People v McGraw*, 484 Mich 120, 133; 771 NW2d 655 (2009). OV 3 does not provide for consideration of conduct that occurs after completion of the sentencing offense. See MCL 777.33. Therefore, the scoring of OV 3 must be limited to the circumstances of the sentencing offenses, i.e., unlawful imprisonment. Unlawful imprisonment is an ongoing offense; all of a defendant's actions during the time that the victim is

restrained constitute conduct that occurred during the offense of unlawful imprisonment. See *People v Chelmicki*, 305 Mich App 58, 70-72; 850 NW2d 612 (2014). A trial court may properly consider all of a defendant's conduct during the sentencing offense. *Id.* at 72. In sentencing a defendant, a trial court is permitted to consider facts underlying an acquittal, *People v Parr*, 197 Mich App 41, 46; 494 NW2d 768 (1992), and need only find facts to support its scoring decisions by a preponderance of the evidence, *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008).

In recommending a 100-point score for OV 3, the presentence investigation report noted: "Although the defendant was found not guilty in the murder of Kenyetta Williams, he created the circumstances that ultimately led to the death of Mr. Williams." In assessing 100 points for OV 3, the trial court stated:

> I'm ready to rule on OV3. OV3 is scored correctly in the court's opinion. No question that the, even though the Defendant was not –
>
> He was found not guilty of the murder of Kenyetta Williams, the Court after hearing all the testimony does think that he created the circumstances that led to the death of Mr. Williams. So OV3 is properly scored. Let's move on.

The trial court properly assessed 100 points for OV 3. The sentencing offenses were two counts of unlawful imprisonment. The victims of those offenses, Justina Horton and Jasmine Horton, remained bound by duct tape in another room of the house when defendant confronted Katherine Horton and Williams in the front of the house and Williams was shot and killed. The unlawful imprisonment offenses thus remained ongoing when Williams was shot, and defendant's actions in the front of the house may be considered in scoring the offense variables. See *Chelmicki*, 305 Mich App at 70-72. Although Williams was not the victim of the sentencing offenses of unlawful imprisonment, he nonetheless was a victim for the purpose of OV 3 because he was harmed by defendant's criminal acts. See *Laidler*, 491 Mich at 349 n 6; *Albers*, 258 Mich App at 593. Even if Williams was shot in a struggle or in self-defense, defendant's criminal acts were a factual cause of Williams's death. Defendant used the firearms to commit the sentencing offenses by pointing the weapons at Justina and Jasmine, and he then pointed and used the same weapons when he confronted Katherine and Williams while Justina and Jasmine remained restrained. If defendant had not used these weapons in committing the crimes, Williams would not have been killed. Hence, the trial court did not err in scoring OV 3.

OV 7 addresses aggravated physical abuse. MCL 777.37(1); *Hardy*, 494 Mich at 439. On the date of the crimes in this case, OV 7 required a score of 50 points if "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense[.]" MCL 777.37(1)(a).[3] In scoring OV

---

[3] Effective January 5, 2016, MCL 777.37(1)(a) was amended to require a 50 point score if "[a] victim was treated sadism, torture, excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense[.]" See 2015 PA

7, a court must count as a victim each person who was placed in danger of injury or loss of life. MCL 777.37(2); *People v Hunt*, 290 Mich App 317, 323; 810 NW2d 588 (2010). For the purpose of OV 7, " 'sadism' means conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." MCL 777.37(3). OV 7 may be scored on the basis of emotional or psychological abuse; physical abuse is not required. *People v Mattoon*, 271 Mich App 275, 276; 721 NW2d 269 (2006).

In *Hardy*, 494 Mich at 440, our Supreme Court addressed the fourth category for which 50 points may be assessed under OV 7, i.e., "conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). The *Hardy* Court "conclude[d] that it is proper to assess points under OV 7 for conduct that was intended to make a victim's fear or anxiety greater by a considerable amount." *Hardy*, 494 Mich at 441. "The relevant inquiries are (1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and, if so, (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." *Id*. at 443-444. The Court found that racking a shotgun during a carjacking to make the victim fear an imminent violent death supported an assessment of 50 points for OV 7. *Id*. at 445. Also, threatening and striking victims with what appeared to be a sawed-off shotgun went beyond what was necessary to commit an armed robbery and was intended to increase the victims' fear by a considerable amount, thus supporting a 50-point assessment for OV 7. *Id*. at 446-447. In light of *McGraw*, a sentencing court may consider only conduct that occurred during the criminal offense for the purpose of scoring OV 7. *Thompson*, ___ Mich App at ___; slip op at 4-5.

The presentence investigation report explained the recommendation of assessing 50 points for OV 7 as follows:

> OV7 notes the victim was treated with sadism, torture, excessive brutality or conduct to substantially increase the fear and anxiety the victims suffered from the offense. Accordingly, the Probation Department scored 50 points. Justina and Jasmine Howard informed investigators they experienced fear and anxiety when the defendant held them at gunpoint and later duct-taped them. Jasmine Horton informed investigators that she believed the defendant would ultimately shoot her in the back of the head. The fear and anxiety of the victims was further increased when they heard the gunshots that killed Kenyetta Williams.

In addressing OV 7 at sentencing, the prosecutor noted that defendant went into the basement of the home, pointed guns at Justina and Jasmine, duct-taped them, and had them get on their stomachs. Jasmine thought she was going to be shot in the head. Defendant then escorted the girls to the main floor of the house and had them sit on a couch while he waited for Katherine and Williams to arrive; defendant then shot Williams in the girls' presence. The prosecutor also noted that Katherine and Williams could be counted as victims for the purpose of OV 7, and that Williams lost his life and Katherine sustained injuries to her face from fighting with defendant. The prosecutor continued:

---

137. A sentence must be imposed in accordance with the version of the guidelines in effect when the crime was committed. See *People v Buehler*, 477 Mich 18, 24; 727 NW2d 127 (2007).

A big part of offense variable 7 is sadism, conduct as to subject a victim to extreme or prolonged pain or humiliation.

This entire incident was to humiliate and to cause suffering to Katherine Horton and Kenyetta Williams for their perceived transgression against the Defendant.

The trial court asked the probation officer to comment on OV 7, and the probation officer stated:

Your Honor, per the author of the [presentence investigation] report, OV-7 notes the victim was treated with sadism, torture, or excessive brutality based on the investigator's report. These two individuals experienced fear and anxiety when the defendant held them at gun point and later duct –aped [sic] their mouth and hand [sic].

The trial court then stated: "For the argument made by the people and the probation department, the Court is going, the Court finds OV-7 was properly scored."

The trial court properly assessed 50 points for OV 7. There was more than ample evidence that defendant engaged in conduct beyond the minimum necessary to commit the offense of unlawful imprisonment, and that the conduct was designed to make the victims' fear or anxiety greater by a considerable amount. Defendant went into the basement where Justina and Jasmine were sleeping, pointed guns at them, ordered them to lie on their stomachs, bound their hands with duct tape, and put duct tape on their mouths. Jasmine feared that she would be shot in the back of the head. He then ordered the girls upstairs, removed the duct tape from their mouths but not their hands, and had them sit in a back room while he waited for their mother, Katherine, and her boyfriend, Williams, to arrive home. The girls were later subjected to hearing defendant confront Katherine and Williams in the front of the house while the girls remained bound by duct tape in the back room. The girls heard the sounds of defendant striking Katherine and the gunshots that killed Williams, which increased their fear and anxiety. The girls screamed during the incident. In addition, Williams and Katherine may be counted as victims because they were placed in danger of injury or loss of life. See MCL 777.37(2); *Hunt*, 290 Mich App at 323. Williams was killed from gunshot wounds, and Katherine sustained injuries to her face from being struck by defendant with a gun. The unlawful imprisonment offense remained ongoing during this incident because the girls were still confined in the back room, and defendant's conduct thus occurred during the sentencing offenses. See *Chelmicki*, 305 Mich App at 70-72. Hence, the trial court did not err in assessing 50 points for OV 7.

Defendant next argues that a Sixth Amendment violation occurred because judicial fact-finding in the scoring of OVs 3, 4, 7, and 10 increased his minimum sentencing guidelines range. We agree. A Sixth Amendment challenge presents a question of constitutional law that is reviewed de novo. *People v Lockridge*, 498 Mich 358, 373; 870 NW2d 502 (2015).

In *Lockridge*, 498 Mich at 364, our Supreme Court held that Michigan's sentencing guidelines are constitutionally deficient under the Sixth Amendment to the extent that "the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines

minimum sentence range, i.e. the 'mandatory minimum' sentence under *Alleyne* [*v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013)]." As a remedy for this constitutional violation, our Supreme Court "sever[ed] MCL 769.34(2) to the extent that it makes the sentencing guidelines range as scored on the basis of facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt mandatory." *Lockridge*, 498 Mich at 364. The Court also struck "down the requirement in MCL 769.34(3) that a sentencing court that departs from the applicable guidelines range must articulate a substantial and compelling reason for that departure." *Id*. at 364-365. The Court held "that a guidelines minimum sentence range calculated in violation of *Apprendi* [*v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000),] and *Alleyne* is advisory only and that sentences that depart from that threshold are to be reviewed by appellate courts for reasonableness." *Lockridge*, 498 Mich at 365. Courts must continue to determine the applicable guidelines range and take it into account at sentencing. *Id*.

For cases that were held in abeyance for *Lockridge*, most of which involved challenges that were not preserved in the trial court, our Supreme Court held that a defendant's Sixth Amendment right is impaired if the "facts admitted by a defendant or found by the jury verdict were *insufficient* to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced." *Lockridge*, 498 Mich at 395. "[A]ll defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Id*. "[I]n cases in which a defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment, the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error." *Id*. at 397. Such remands are warranted only in cases in which the defendant was sentenced on or before July 29, 2015, the date of the *Lockridge* decision. *Id*.[4] On remand,

> a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by law, if it decides to resentence the defendant. Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the circumstances existing at the time of the original sentence. [*Id*. at 398 (quotation marks and citations omitted).]

---

[4] For defendants sentenced after the *Lockridge* decision, traditional plain-error review will apply. *Lockridge*, 498 Mich at 397.

In the present case, defendant preserved his *Lockridge* issue by raising it at sentencing. See *People v Steanhouse*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 318329); slip op at 21, lv pending. In *People v Stokes*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 321303); slip op at 9-10, lv pending, this Court explained that a preserved *Lockridge* error is not structural and is therefore subject to the harmless beyond a reasonable doubt standard. This Court further held that in order to determine whether the preserved *Lockridge* error in *Stokes* was harmless, the remand procedure described in *Lockridge* must be followed. *Id*. at 10. That is, the remand procedure described in *Lockridge* applies to both preserved and unpreserved pre-*Lockridge* sentencing errors. *Id*. at 11.

Defendant argues that there was judicial fact-finding in the scoring of OVs 3, 4, 7, and 10. We agree. The prosecutor confesses error on this defense argument.

As discussed, OV 3 addresses physical injury to the victim. MCL 777.33(1); *Laidler*, 491 Mich at 343. A trial court must assess 100 points under OV 3 "if death results from the commission of a crime and homicide is not the sentencing offense." MCL 777.33(2)(b); *Laidler*, 491 Mich at 343. The jury made no finding and defendant made no admission concerning the facts necessary to score this OV. Neither of the offenses of which defendant was convicted, i.e., felony-firearm and unlawful imprisonment, contains an element concerning the death of a victim. See MCL 750.227b; MCL 750.349b. The trial court's assessment of 100 points for OV 3 was thus based on judicial fact-finding.

OV 4 addresses psychological injury to a victim. MCL 777.34(1); *People v Lockett*, 295 Mich App 165, 182; 814 NW2d 295 (2012). OV 4 requires a 10 point assessment if "[s]erious psychological injury requiring professional treatment occurred to a victim[.]" MCL 777.34(1)(a). The jury made no finding and defendant made no admission concerning the facts necessary to score this OV. Neither of the offenses of which defendant was convicted, i.e., felony-firearm and unlawful imprisonment, contains an element concerning a victim's psychological injury. See MCL 750.227b; MCL 750.349b. The trial court's assessment of 10 points for OV 4 was therefore based on judicial fact-finding.

As discussed, OV 7 addresses aggravated physical abuse. MCL 777.37(1); *Hardy*, 494 Mich at 439. On the date of the crimes in this case, OV 7 required a score of 50 points if "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense[.]" MCL 777.37(1)(a). The jury made no finding and defendant made no admission concerning the facts necessary to score this OV. Neither of the offenses of which defendant was convicted, i.e., felony-firearm and unlawful imprisonment, contains an element concerning the facts needed to score this OV. See MCL 750.227b; MCL 750.349b. The trial court's assessment of 50 points for OV 7 was therefore based on judicial fact-finding.

OV 10 addresses the exploitation of a vulnerable victim. MCL 777.40(1). A 5 point score is required if "[t]he offender exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious[.]" MCL 777.40(1)(c). The jury made no finding and defendant made no admission concerning the facts necessary to score this OV. Neither of the offenses of which defendant was convicted, i.e., felony-firearm and unlawful imprisonment, contains an element

-13-

concerning the facts needed to score this OV. See MCL 750.227b; MCL 750.349b. The trial court's assessment of 5 points for this OV was therefore based on judicial fact-finding.

Subtracting 100 points from the OV 3 score, 10 points from the OV 4 score, 50 points from the OV 7 score, and 5 points from the OV 10 score, reduces defendant's total OV score from 195 points to 30 points. This changes his OV level from VI to III, causing his sentencing cell to change from D-VI to D-III on the Class C grid. His sentencing guidelines range would then become 29 to 57 months, instead of the originally calculated range of 50 to 100 months. See MCL 777.64. It follows, then, that facts admitted by defendant or found by the jury beyond a reasonable doubt at trial were insufficient to assess the minimum number of OV points necessary for defendant's score to fall within the cell of the sentencing grid under which he was sentenced. Defendant's unlawful imprisonment sentences were not subject to an upward departure from the originally calculated range; his 100-month minimum sentences for unlawful imprisonment fell within the calculated guidelines range of 50 to 100 months. Therefore, an unconstitutional constraint on the trial court's sentencing discretion impaired defendant's constitutional rights. See *Lockridge*, 498 Mich at 364. Defendant was sentenced before July 29, 2015. It is therefore necessary to remand the case to the trial court in accordance with the remand procedure set forth in *Lockridge*, as described earlier in this opinion, to determine whether the court would have imposed a materially different sentence but for the constitutional error. See *id*. at 395-399.

We affirm defendant's convictions but remand for correction of the judgment of sentence to reflect a term of five years' imprisonment for defendant's felony-firearm conviction and for reconsideration of defendant's unlawful imprisonment sentences. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Mark J. Cavanagh
/s/ Amy Ronayne Krause