McCORMACK, J.
As this case implicates more than one somewhat complex legal doctrine, it may be useful first to state the practical question we confront in as plain English as possible: Can a defendant whose conviction for felony murder has been reversed on appeal be retried for *96 that charge when he was also acquitted of the only felony that supported it?
As detailed below, this case turns on the protection afforded by the Double Jeopardy Clause of the United States Constitution. US Const, Am V This clause protects a criminal defendant from multiple prosecutions and multiple punishments for the same offense. This case also implicates the doctrine of collateral estoppel, which in general imports a final determination from one case into a subsequent case requiring a determination on that same issue. Collateral estoppel and double jeopardy can overlap, and do so here.
We conclude that the collateral-estoppel strand of Double Jeopardy Clause jurisprudence prevents the prosecution from re-charging the defendant with felony murder. Because the defendant’s acquittal of the only supporting felony triggers collateral estoppel, the Double Jeopardy Clause precludes a second felony-murder prosecution of the defendant.
I. FACTS AND PROCEDURAL BACKGROUND
In December 2009, the defendant was convicted by a jury of first-degree felony murder, MCL 750.316(l)(b), second-degree murder, MCL 750.317, assault with intent to commit great bodily harm less than murder, MCL 750.84, carrying a firearm during the commission of a felony, MCL 750.227b, and two counts of unlawful imprisonment, MCL 750.349b. The jury acquitted the defendant of first-degree premeditated murder, MCL 750.316(l)(a), and— importantly — first-degree home invasion, MCL 750.110a(2). Because first-degree home invasion was the only felony that the defendant was charged with that could have supported the conviction for first- *97 degree felony murder, see MCL 750.316(l)(b), the initial jury verdict was, plainly, inconsistent.
The Court of Appeals reversed the defendant’s convictions, holding that the trial court had committed error by denying the defendant’s constitutional right to represent himself. People v Wilson, unpublished opinion per curiam of the Court of Appeals, issued May 10, 2011 (Docket No. 296693). The Court of Appeals remanded this case to the trial court for a new trial, and this Court denied the prosecution’s application for leave to appeal. People v Wilson, 490 Mich 861 (2011).
On April 6, 2012, the prosecution filed an amended information setting forth the charges on retrial. The defendant was re-charged with each of the charges of which he was initially convicted. The defendant moved to dismiss the first-degree felony-murder charge, arguing that the Double Jeopardy Clause prevented a second prosecution on that charge because he stood acquitted of the only predicate felony, which is one of the elements of felony murder. On July 6, 2012, the trial court granted the defendant’s motion to dismiss, agreeing that a second jury could not reconsider the home-invasion element of felony murder given the preclusive effect of the defendant’s acquittal of home invasion.
The Court of Appeals granted the prosecution’s interlocutory application for leave to appeal and reversed the trial court’s order in an unpublished opinion per curiam. The Court of Appeals held that because the jury’s verdict was inconsistent, that inconsistency negated the application of the collateral-estoppel doctrine in the second prosecution, citing United States v Powell, 469 US 57, 68; 105 S Ct 471; 83 L Ed 2d 461 (1984), for the proposition that the jury has the prerogative to *98 return inconsistent verdicts. On May 24, 2013, this Court granted leave to appeal. People v Wilson, 494 Mich 853 (2013).
II. LEGAL BACKGROUND
A. DOUBLE JEOPARDY
The Double Jeopardy Clause of the United States Constitution protects defendants against the threat of successive prosecutions for the same offense and multiple punishments for the same offense. US Const, Am V (“No person shall... be subject for the same offence to be twice put in jeopardy of life or limb ....”).
A double-jeopardy challenge presents a question of law that this Court reviews de novo. People v Herron, 464 Mich 593, 599; 628 NW 2d 528 (2001).
B. COLLATERAL ESTOPPEL
Collateral estoppel, also known as issue preclusion, is a common-law doctrine that gives finality to litigants. In essence, collateral estoppel requires that “once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.” Allen v McCurry, 449 US 90, 94; 101 S Ct 411; 66 L Ed 2d 308 (1980). See also Montana v United States, 440 US 147, 153; 99 S Ct 970; 59 L Ed 2d 210 (1979), citing Southern Pacific R Co v United States, 168 US 1, 48-49; 18 S Ct 18; 42 L Ed 355 (1897) (“A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a ‘right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . .. cannot be disputed in a subsequent suit between the same parties or their *99 priviesThe doctrine of collateral estoppel serves many purposes: it “relievefs] parties of the cost and vexation of multiple lawsuits, conserved] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication.” Allen, 449 US at 94.
In 1970, the United States Supreme Court explicitly recognized the conceptual overlap between double jeopardy and collateral estoppel, and officially linked them by constitutionalizing collateral estoppel within the Fifth Amendment’s guarantee against double jeopardy. Ashe v Swenson, 397 US 436, 445; 90 S Ct 1189; 25 L Ed 2d 469 (1970). The Ashe Court noted, however, that “collateral estoppel has been an established rule of federal criminal law at least since this Court’s decision more than 50 years ago in United States v. Oppenheimer [242 US 85; 37 S Ct 68; 61 L Ed 161 (1916)].” Ashe, 397 US at 443.[1]
The defendant in Ashe had been tried and acquitted of the robbery of one member of a poker game. Following the defendant’s acquittal, the prosecution charged him with the robbery of a different poker player, and he was convicted. The Court explained that collateral estoppel “means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.” Id. The question is “whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.” Id. at 444. Because the “single rationally conceivable issue in dispute before the jury was whether the petitioner had *100 been one of the robbers,” this second prosecution, which necessarily would have required the relitigation of this already determined issue, violated the Fifth Amendment. Id. at 445.
The Supreme Court applied collateral estoppel in the context of a double-jeopardy analysis again in Yeager v United States, 557 US 110; 129 S Ct 2360; 174 L Ed 2d 78 (2009). In Yeager, a jury acquitted the defendant of certain fraud charges, but could not reach a verdict on the insider-trading charges. The acquittals and hung counts were logically inconsistent with one another; in order to acquit the defendant of the fraud counts, the jury would have had to decide that the defendant had not possessed insider information, which should have led a rational jury to also acquit him of the insider-trading charges. The Court held that this apparent inconsistency did not change the preclusive force of the acquittal in a second prosecution under the Double Jeopardy Clause. “A hung count is not a relevant part of the record of the prior proceeding,” and therefore has no place in the collateral-estoppel analysis. Yeager, 557 US at 121. In other words, the Court held that the hung counts were not legally meaningful and could not defeat the preclusive force of the acquittals.
C. INCONSISTENT VERDICTS
As with collateral estoppel, the Supreme Court authority concerning the validity of inconsistent jury verdicts is well developed. In Dunn v United States, 284 US 390, 393-394; 52 S Ct 189; 76 L Ed 356 (1932), the Court held that inconsistent verdicts within a single jury trial are permissible, explaining “[t]hat the verdict may have been the result of compromise, or of a mistake on the part of the jury .... But verdicts cannot be upset by speculation or inquiry into such matters.” This *101 Court has similarly held that inconsistent verdicts do not require reversal, because “[j]uries are not held to any rules of logic nor are they required to explain their decisions.” People v Vaughn, 409 Mich 463, 466; 295 NW 2d 354 (1980).
The Supreme Court reaffirmed this principle in Powell, 469 US 57, rejecting the defendant’s argument that the principles of collateral estoppel should require a different result. The defendant, who had been acquitted of the predicate felony but convicted of the compound felony, argued that principles of collateral estoppel should be incorporated into the inconsistent verdict case and should require the reversal of the compound-felony conviction. Id. at 64 (“[I]ndeed, [the defendant] urges that principles of res judicata or collateral estoppel should apply to verdicts rendered by a single jury, to preclude acceptance of a guilty verdict on a [compound felony] where the jury acquits the defendant of the predicate felony.”) (emphasis added). The Court disagreed with the defendant, noting that in the case of an inconsistent verdict, “it is unclear whose ox has been gored.” Id. at 65. The defendant’s conviction stood.
III. APPLICATION
Our decision in this case hinges on whether, as the Court of Appeals held, the inconsistent-verdict reasoning of Dunn and Powell is relevant to the defendant’s collateral-estoppel claim such that the rule from Ashe and Yeager does not apply. As an initial matter, we note that the inconsistent-verdict cases, Dunn and Powell, feature only direct appeals from a single jury verdict. By definition, collateral estoppel and double jeopardy are simply not applicable to a single verdict, even when that verdict is inconsistent. Ashe and Yeager, in contrast, each concerned the propriety of a second prosecution. *102 The very application of the Double Jeopardy Clause necessarily requires more than one trial: Again, double jeopardy is irrelevant within the scope of a single prosecution and the resulting verdict because the defendant is in continuing jeopardy in any single trial. Yeager, 557 US at 117; id. at 130 (Scalia, J., dissenting) (“As a conceptual matter, it makes no sense to say that events occurring within a single prosecution can cause an accused to be twice put in jeopardy.”) (citation and quotation marks omitted).[2] See also Boston Muni Court Justices v Lydon, 466 US 294, 308-309; 104 S Ct 1805; 80 L Ed 2d 311 (1984).[3] Relatedly, if a defendant’s conviction is reversed on direct appeal, a second prosecution does not implicate double-jeopardy concerns, because in that instance too the defendant is still in continuing jeopardy. In a second prosecution following an appellate reversal, only “[ajcquittals, [not] convictions, terminate the initial jeopardy.” Lydon, 466 US at 308.
Because Powell involved an appeal from a single trial, no double-jeopardy concerns were present, despite the *103 defendant’s attempt to make them relevant. Powell, 469 US at 64. While the verdict in Powell was inconsistent, the doctrine of collateral estoppel was not relevant. Dunn, 284 US at 393. Collateral estoppel, like double jeopardy more broadly, necessarily presupposes some passage of time between a final adjudication of an issue at one time, and the threat of a subsequent adjudication of the same issue. In this case, the Court of Appeals apparently extrapolated from Powell the proposition that application of collateral estoppel is only appropriate when there was a prior consistent verdict. Since Powell did not concern a second prosecution, and therefore no double-jeopardy concerns were implicated, the inconsistent-verdict analysis that Powell provides does not address the important issue presented in the case at hand.[4] The Court of Appeals’ reliance on Powell to authorize re-charging the defendant with felony murder was misplaced, given that his objection sounded in double jeopardy, not the inconsistency of his initial verdict.
It is instead the Yeager holding that demonstrates why the prosecution cannot re-try the defendant for felony murder. Yeager embodies the unremarkable but fundamental proposition that if an issue has been finally resolved at one moment in time, the same issue cannot be resolved differently at a subsequent time. The defendant in this case finds himself facing exactly *104 this problem; he stands acquitted of first-degree home invasion, the only predicate felony that could support a conviction for felony murder and which is thus an element of felony murder, a charge he is facing again. Convicting him of felony murder would, therefore, require the same factual basis as home invasion, for which he was previously and finally acquitted. This is what Yeager prevents.
The importance of an acquittal in the context of the Double Jeopardy Clause is well established. It is of course long settled that, given his acquittal of home invasion, the prosecution is barred from re-charging the defendant again with home invasion, even though the legal error at trial required vacating his convictions. That error does not permit him to be retried for home invasion, even had the error contributed to his acquittal of that charge just as it contributed to his convictions (which does not seem to be the case here). An acquittal is final and unassailable; double jeopardy is a one-way ratchet. Ball v United States, 163 US 662, 671; 16 S Ct 1192; 41 L Ed 300 (1896) (“The verdict of acquittal was final, and could not be reviewed, on error or otherwise, without putting him twice in jeopardy, and thereby violating the constitution. However it may be in England, in this country a verdict of acquittal, although not followed by any judgment, is a bar to a subsequent prosecution for the same offense.”). See also Fong Foo v United States, 369 US 141, 143; 82 S Ct 671; 7 L Ed 2d 629 (1962) (finding an acquittal to be an absolute bar to a subsequent prosecution even when the acquittal was “based upon an egregiously erroneous foundation”); United States v DiFrancesco, 449 US 117, 129; 101 S Ct 426; 66 L Ed 2d 328 (1980) (“The law attaches particular significance to an acquittal.”); Yeager, 557 US at 119 (“[T]he jury’s acquittals unquestionably terminated *105 petitioner’s jeopardy with respect to the issues finally decided in those counts.”).
The inconsistency in the defendant’s initial jury verdict here — though distracting and confounding as illogical verdicts are — does not alter this fundamental principle, given the subsequent appellate reversal of his convictions. Notwithstanding the dissent’s lengthy protest to the contrary, the initial guilty verdicts are no more. Although the defendant was convicted of felony murder, that conviction has since been vacated because it was constitutionally infirm; the defendant no longer stands convicted, not of anything, not at all. The only final adjudication the defendant carries into his second trial, then, is his acquittal of first-degree home invasion, which must be given effect pursuant to the collateral-estoppel prong of double jeopardy in the retrial. Lydon, 466 US at 308.
Yeager thus controls: The defendant’s reversed felony-murder conviction here must be treated exactly as the hung counts were treated in Yeager. Neither a hung count nor a count that is reversed on appeal can defeat the preclusive effect of an acquittal. Like a hung count, a reversed count is not a final adjudication; by operation of law the finality of the conviction has been undone. By holding that a legal error required the reversal of a defendant’s convictions, we have legally proclaimed that those convictions are no longer adjudications at all.[5] Indeed, the legal meaning of a reversed conviction is settled. As the Supreme Court has said:
*106 [R] ever sal for trial error, as distinguished from evidentiary sufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect.... [Burks v United States, 437 US 1, 15; 98 S Ct 2141; 57 L Ed 2d 1 (1978) (emphasis added).][6]
The same is not true of the defendant’s acquittal. An acquittal is never recast or disturbed, no matter what error might have produced it. Ball, 163 US at 671. The defendant begins his second trial with only one perfected adjudication — his acquittal of first-degree home invasion. Just as in Yeager, the acquittal must be given preclusive effect.6 [7] Our disagreement with the dissent *107 boils down to exactly this point: The dissent believes that a legally vacated conviction is still meaningful for the purposes of collateral-estoppel analysis.* ******[8] We see no available way to bring that legally vacated conviction back to life.[9]
The prosecution is free to retry the defendant on all the other vacated convictions. But the Double Jeopardy Clause collaterally estops a new prosecution for felony murder.
*108 IV CONCLUSION
We conclude that the Double Jeopardy Clause prevents the prosecution from re-charging the defendant with felony murder when the only verdict that remains is the defendant’s acquittal of the predicate felony. Therefore, we reverse the judgment of the Court of Appeals and remand this case to the trial court for further proceedings.
YOUNG, C.J., and CAVANAGH and KELLY, JJ., concurred with McCormack, J.

 The defendant has not argued that the “same offense” rationale of double jeopardy is implicated. Thus we address only whether the collateral-estoppel strand of double jeopardy is implicated.

 The dissent is correct that Justice Scalia relied on Dunn and Powell “to support his position that the inconsistent nature of the verdict in Yeager nullified Yeager’s reliance on the valid and final acquittal for collateral estoppel purposes.” Justice Sealia’s view, however reasonable, is not the rule of law we must apply here as he, of course, dissented in Yeager. We cite Justice Sealia’s dissent for the unremarkable proposition that double-jeopardy concerns are only implicated when there is a second trial.

 There is one exception: in two cases the Supreme Court has applied the Double Jeopardy Clause to midtrial acquittals. In both instances, the Court held that the midtrial acquittals were final and that the Double Jeopardy Clause barred their reconsideration. Smith v Massachusetts, 543 US 462, 473; 125 S Ct 1129; 160 L Ed 2d 914 (2005); Smalis v Pennsylvania, 476 US 140, 145-146; 106 S Ct 1745; 90 L Ed 2d 116 (1986). These exceptions are, of course, inapplicable to this case in which there was no mid-trial acquittal. Indeed, Smith and Smalis support the more important proposition for the defendant, that acquittals are final and unassailable in the application of the Double Jeopardy Clause.

 We agree with the dissent that the Supreme Court squarely and thoroughly addressed whether collateral-estoppel principles are relevant to inconsistent verdicts in Powell, but we are not similarly troubled by why the Court did so given that double-jeopardy concerns are simply not applicable within the scope of a single trial. The defendant made the argument that collateral estoppel should bar his inconsistent verdict and managed to convince the United States Court of Appeals for the Ninth Circuit of his view. The Supreme Court disagreed, and naturally explained its reasoning.

 We know of no other situation in a criminal prosecution in which we permit a defendant’s vacated conviction to be used to the defendant’s detriment and see no reason why we should create an exception. See, e.g., People v Holt, 54 Mich App 60, 63-64; 220 NW2d 205 (1974) (stating that a vacated conviction cannot he used for sentencing purposes); People v Crable, 33 Mich App 254, 257; 189 NW2d 740 (1971) (stating that a vacated conviction cannot be used to impeach a defendant).

 We disagree with the dissent’s understanding of Burks'. Burks stands for the proposition that a reversed conviction is legally meaningless, which is what matters for our purposes. Of course it is always the case that “society maintains a valid concern for insuring that the guilty are punished,” Burks, 437 US at 15, and that concern animates the authority that permits the prosecution to retry the defendant for all of the offenses that were vacated but for which there is no double-jeopardy constraint. In this case it is only the felony-murder charge that is barred on retrial, not second-degree murder, assault with intent to commit great bodily harm less than murder, carrying a firearm during the commission of a felony, and two counts of unlawful imprisonment. The defendant remains in continuing jeopardy on these vacated convictions, and would so remain with respect to his felony-murder conviction but for the preclusive force of his home-invasion acquittal.

 The Yeager Court’s discussion of the rationality of verdicts in determining whether collateral estoppel applies is not particularly relevant here, where there is only one verdict to consider. It is noteworthy, however, that the jury verdict in Yeager was not obviously rational or consistent. The Supreme Court instead rationalized the verdict by treating the hung counts, which were inconsistent with the acquittals, as legal “nonevents,” given that they were not final adjudications. The Court of Appeals’ reversal of the defendant’s felony-murder conviction in this case renders that conviction a “nonevent” as well. A reversed conviction is of even less legal consequence than a hung count. Although it is understandable that the Supreme Court *107 would need to dedicate some time to analyzing the proper weight to give a hung count — an undisturbed jury “determination” of a sort — at the time of the defendant’s second trial when analyzing how to give meaning to a jury’s findings, it is much easier to determine what weight should be given a reversed conviction — none. Burks, 437 US at 15. A reversed conviction, like a hung count, cannot be considered a relevant part of the record of the prior proceeding. See Yeager, 557 US at 121.

 The Yeager and Ashe Courts were not considering vacated convictions in their collateral-estoppel analyses, of course, but undisturbed jury findings. Those undisturbed findings, therefore, were still available for discernment. In cases, like Yeager and Ashe, in which there is an undisturbed jury verdict to examine at the time of retrial, a reviewing court must delve into the facts and circumstances of the jury’s findings in order to understand the verdict’s specific meaning. When, as here, there simply is no conviction to be so analyzed, as it was previously vacated by the Court of Appeals, we are bound by that legal finding. We cannot undo the reversal and delve back into a jury finding that has been held to be invalid. The dissent jumps over this critical step. Because a reversal renders a conviction meaningless, there is nothing left for a reviewing court to examine or decipher.

 Neither State v Kelly, 201 NJ 471; 992 A2d 776 (2010), nor Evans v United States, 987 A2d 1138 (DC, 2010), are helpful to our analysis. Although the dissent is correct that these cases involve similar facts, neither engages the argument that a vacated conviction functions as a proclamation that a jury determination is a legal nullity. It is difficult to understand whether United States v Bruno, 531 Fed Appx 47, 49 (CA 2 2013), has any persuasive force, given that it is an unpublished order devoid of any specific factual background as to the nature of the convicted and acquitted counts. But from the cursory facts that are presented, it does not appear that the charges decided differently involved the same conduct or subject matter, which would alone foreclose a collateralestoppel claim. Of course we are not hound by any opinion from a sister jurisdiction reaching the opposite conclusion that we reach here, especially when none addresses the issue we find decisive.