(Slip Opinion) OCTOBER TERM, 2016 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BRAVO-FERNANDEZ ET AL. *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

No. 15–537. Argued October 4, 2016—Decided November 29, 2016

The issue-preclusion component of the Double Jeopardy Clause bars a second contest of an issue of fact or law raised and necessarily resolved by a prior judgment. *Ashe* v. *Swenson*, 397 U. S. 436, 443. The burden is on the defendant to demonstrate that the issue he seeks to shield from reconsideration was actually decided by a prior jury's verdict of acquittal. *Schiro* v. *Farley*, 510 U. S. 222, 233. When the same jury returns irreconcilably inconsistent verdicts on the issue in question, a defendant cannot meet that burden. The acquittal, therefore, gains no preclusive effect regarding the count of conviction. *United States* v. *Powell*, 469 U. S. 57, 68–69. Issue preclusion does, however, attend a jury's verdict of acquittal if the same jury in the same proceeding fails to reach a verdict on a different count turning on the same issue of ultimate fact. *Yeager* v. *United States*, 557 U. S. 110, 121–122.

In this case, a jury convicted petitioners Juan Bravo-Fernandez (Bravo) and Hector Martínez-Maldonado (Martínez) of bribery in violation of 18 U. S. C. §666. Simultaneously, the jury acquitted them of conspiring to violate §666 and traveling in interstate commerce to violate §666. Because the only contested issue at trial was whether Bravo and Martínez had violated §666 (the other elements of the acquitted charges—agreement and travel—were undisputed), the jury's verdicts were irreconcilably inconsistent. Unlike the guilty verdicts in *Powell*, however, petitioners' convictions were later vacated on appeal because of error in the judge's instructions unrelated to the verdicts' inconsistency. In the First Circuit's view, §666 proscribes only *quid pro quo* bribery, yet the charge had permitted the jury to find petitioners guilty on a gratuity theory. On remand, Bravo and Martínez moved for judgments of acquittal on the standalone §666 charg-

es.  They argued that the issue-preclusion component of the Double Jeopardy Clause barred the Government from retrying them on those charges because the jury necessarily determined that they were not guilty of violating §666 when it acquitted them of the related conspiracy and Travel Act offenses.  The District Court denied the motions, and the First Circuit affirmed, holding that the eventual invalidation of petitioners' §666 convictions did not undermine *Powell*'s instruction that issue preclusion does not apply when the same jury returns logically inconsistent verdicts.

*Held*: The issue-preclusion component of the Double Jeopardy Clause does not bar the Government from retrying defendants, like petitioners, after a jury has returned irreconcilably inconsistent verdicts of conviction and acquittal and the convictions are later vacated for legal error unrelated to the inconsistency.  Pp. 12–19.

    (a) Because petitioners' trial yielded incompatible jury verdicts, petitioners cannot establish that the jury necessarily resolved in their favor the question whether they violated §666.  In view of the Government's inability to obtain review of the acquittals, *Powell*, 469 U. S., at 68, the inconsistent jury findings weigh heavily against according those acquittals issue-preclusive effect.  The subsequent vacatur of petitioners' bribery convictions does not alter this analysis.  The critical inquiry is whether the jury actually decided that petitioners did not violate §666.  *Ashe* instructs courts to approach that task with "realism and rationality," 397 U. S., at 444, in particular, to examine the trial record "with an eye to all the circumstances of the proceedings," *ibid.*  The jury's verdicts convicting petitioners of violating §666 remain relevant to this practical inquiry, even if the convictions are later vacated on appeal for unrelated trial error.

    Petitioners could not be retried if the Court of Appeals had vacated their §666 bribery convictions because of insufficient evidence, see *Burks* v. *United States*, 437 U. S. 1, 10–11, or if the trial error could resolve the apparent inconsistency in the jury's verdicts.  But the evidence here was sufficient to convict petitioners on the *quid pro quo* bribery theory the First Circuit approved.  And the instructional error cannot account for the jury's inconsistent determinations, for the error applied equally to every §666-related count.  Pp. 12–16.

    (b) Petitioners argue that vacated judgments should be excluded from the *Ashe* inquiry because vacated convictions, like the hung counts in *Yeager*, are legal nullities that "have never been accorded respect as a matter of law or history."  *Yeager*, 557 U. S., at 124.  That argument misapprehends the *Ashe* inquiry.  Bravo and Martínez bear the burden of showing that the issue whether they violated §666 has been "determined by a valid and final judgment of acquittal."  557 U. S., at 119 (internal quotation marks omitted).  To judge

Syllabus

whether they carried that burden, a court must realistically examine the record to identify the ground for the §666-based *acquittals*. *Ashe*, 397 U. S., at 444. A conviction that contradicts those acquittals is plainly relevant to that determination, no less so simply because it is later overturned on appeal for unrelated legal error. See *Powell*, 469 U. S., at 65.

　　Petitioners further contend that, under *Yeager,* the §666 convictions are meaningless because the jury was allowed to convict on the basis of conduct not criminal in the First Circuit—payment of a gratuity. But *Yeager* did not rest on a court's inability to detect the basis for a decision the jury in fact rendered. Rather, when a jury hangs, there is *no decision*, hence no inconsistency. 557 U. S., at 124–125. By contrast, a verdict of guilt *is* a jury decision, even if subsequently vacated, and therefore can evince jury inconsistency. That is the case here. Petitioners gained a second trial on the standalone bribery charges, but they are not entitled to more. Issue preclusion is not a doctrine they can commandeer when inconsistent verdicts shroud in mystery what the jury necessarily decided. Pp. 16–19.

790 F. 3d 41, affirmed.

　　GINSBURG, J., delivered the opinion for a unanimous Court. THOMAS, J., filed a concurring opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———

No. 15–537

———

## JUAN BRAVO-FERNANDEZ AND HECTOR MARTINEZ-MALDONADO, PETITIONERS *v.* UNITED STATES

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

[November 29, 2016]

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns the issue-preclusion component of the Double Jeopardy Clause.[1] In criminal prosecutions, as in civil litigation, the issue-preclusion principle means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe* v. *Swenson*, 397 U. S. 436, 443 (1970).

Does issue preclusion apply when a jury returns inconsistent verdicts, convicting on one count and acquitting on another count, where both counts turn on the very same issue of ultimate fact? In such a case, this Court has held, both verdicts stand. The Government is barred by the Double Jeopardy Clause from challenging the acquittal,

———

[1] The parties use the expression "collateral estoppel component," but as this Court has observed, "issue preclusion" is the more descriptive term. *Yeager* v. *United States*, 557 U. S. 110, 120, n. 4 (2009); see Restatement (Second) of Judgments §27, Comment *b*, pp. 251–252 (1980).

see *Green* v. *United States*, 355 U. S. 184, 188 (1957), but because the verdicts are rationally irreconcilable, the acquittal gains no preclusive effect, *United States* v. *Powell*, 469 U. S. 57, 68 (1984).

Does issue preclusion attend a jury's acquittal verdict if the same jury in the same proceeding fails to reach a verdict on a different count turning on the same critical issue? This Court has answered yes, in those circumstances, the acquittal has preclusive force. *Yeager* v. *United States*, 557 U. S. 110, 121–122 (2009). As "there is no way to decipher what a hung count represents," we reasoned, a jury's failure to decide "has no place in the issue-preclusion analysis." *Ibid.*; see *id.*, at 125 ("[T]he fact that a jury hangs is evidence of nothing—other than, of course, that it has failed to decide anything.").

In the case before us, the jury returned irreconcilably inconsistent verdicts of conviction and acquittal. Without more, *Powell* would control. There could be no retrial of charges that yielded acquittals but, in view of the inconsistent verdicts, the acquittals would have no issue-preclusive effect on charges that yielded convictions. In this case, however, unlike *Powell*, the guilty verdicts were vacated on appeal because of error in the judge's instructions unrelated to the verdicts' inconsistency. Petitioners urge that, just as a jury's failure to decide has no place in issue-preclusion analysis, so vacated guilty verdicts should not figure in that analysis.

We hold otherwise. One cannot know from the jury's report why it returned no verdict. "A host of reasons" could account for a jury's failure to decide—"sharp disagreement, confusion about the issues, exhaustion after a long trial, to name but a few." *Yeager*, 557 U. S., at 121. But actual inconsistency in a jury's verdicts is a reality; vacatur of a conviction for unrelated legal error does not reconcile the jury's inconsistent returns. We therefore bracket this case with *Powell*, not *Yeager*, and affirm the

judgment of the Court of Appeals, which held that issue preclusion does not apply when verdict inconsistency renders unanswerable "what the jury necessarily decided." 790 F. 3d 41, 47 (CA1 2015).

## I
### A

The doctrine of claim preclusion instructs that a final judgment on the merits "foreclos[es] successive litigation of the very same claim." *New Hampshire* v. *Maine*, 532 U. S. 742, 748 (2001); see Restatement (Second) of Judgments §19, p. 161 (1980) (hereinafter Restatement). So instructing, the doctrine serves to "avoid multiple suits on identical entitlements or obligations between the same parties." 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §4402, p. 9 (2d ed. 2002) (hereinafter Wright & Miller). Long operative in civil litigation, Restatement, at 2, claim preclusion is also essential to the Constitution's prohibition against successive criminal prosecutions. No person, the Double Jeopardy Clause states, shall be "subject for the same offense to be twice put in jeopardy of life or limb." Amdt. 5. The Clause "protects against a second prosecution for the same offense after conviction"; as well, "[i]t protects against a second prosecution for the same offense after acquittal." *North Carolina* v. *Pearce*, 395 U. S. 711, 717 (1969). "[A] verdict of acquittal [in our justice system] is final," the last word on a criminal charge, and therefore operates as "a bar to a subsequent prosecution for the same offense." *Green* v. *United States*, 355 U. S. 184, 188 (1957).

The allied doctrine of issue preclusion ordinarily bars relitigation of an issue of fact or law raised and necessarily resolved by a prior judgment. See Restatement §§17, 27, at 148, 250; Wright & Miller §4416, at 386. It applies in both civil and criminal proceedings, with an important distinction. In civil litigation, where issue preclusion and

its ramifications first developed, the availability of appellate review is a key factor. Restatement §28, Comment *a*, at 274; see *id.*, §28, Reporter's Note, at 284 (noting "the pervasive importance of reviewability in the application of preclusion doctrine"). In significant part, preclusion doctrine is premised on "an underlying confidence that the result achieved in the initial litigation was substantially correct." *Standefer* v. *United States*, 447 U. S. 10, 23, n. 18 (1980); see Restatement §29, Comment *f*, at 295. "In the absence of appellate review," we have observed, "such confidence is often unwarranted." *Standefer*, 447 U. S., at 23, n. 18.

In civil suits, inability to obtain review is exceptional; it occurs typically when the controversy has become moot. In criminal cases, however, only one side (the defendant) has recourse to an appeal from an adverse judgment on the merits. The Government "cannot secure appellate review" of an acquittal, *id.*, at 22, even one "based upon an egregiously erroneous foundation," *Arizona* v. *Washington*, 434 U. S. 497, 503 (1978). Juries enjoy an "unreviewable power . . . to return a verdict of not guilty for impermissible reasons," for "the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause." *United States* v. *Powell*, 469 U. S. 57, 63, 65 (1984). The absence of appellate review of acquittals, we have cautioned, calls for guarded application of preclusion doctrine in criminal cases. See *Standefer*, 447 U. S., at 22–23, and n. 18. Particularly where it appears that a jury's verdict is the result of compromise, compassion, lenity, or misunderstanding of the governing law, the Government's inability to gain review "strongly militates against giving an acquittal [issue] preclusive effect." *Id.*, at 23. See also Restatement §29, Comment *g*, at 295 (Where circumstances suggest that an issue was resolved on erroneous considerations, "taking the prior determination at face value for

purposes of the second action would [impermissibly] ex-
tend the . . . imperfections in the adjudicative process.");
*id.*, §28, Comment *j*, at 283 (Issue preclusion may be de-
nied where it is "evident from the jury's verdict that the
verdict was the result of compromise."); Wright & Miller
§4423, at 617 (same).

## B

This case requires us to determine whether an appellate
court's vacatur of a conviction alters issue-preclusion
analysis under the Double Jeopardy Clause. Three prior
decisions guide our disposition.

This Court first interpreted the Double Jeopardy Clause
to incorporate the principle of issue preclusion in *Ashe* v.
*Swenson*, 397 U. S. 436 (1970).[2] *Ashe* involved a robbery
of six poker players by a group of masked men. Ashe was
charged with robbing one of the players, but a jury acquit-
ted him "due to insufficient evidence." *Id.*, at 439. The
State then tried Ashe again, this time for robbing another
of the poker players. Aided by "substantially stronger"
testimony from "witnesses [who] were for the most part
the same," *id.*, at 439–440, the State secured a conviction.
We held that the second prosecution violated the Double
Jeopardy Clause. Because the sole issue in dispute in the
first trial was whether Ashe had been one of the robbers,
the jury's acquittal verdict precluded the State from trying
to convince a different jury of that very same fact in a
second trial. *Id.*, at 445.

---

[2] Though we earlier recognized that res judicata (which embraces
both claim and issue preclusion) applies in criminal as well as civil
proceedings, we did not link the issue-preclusion inquiry to the Double
Jeopardy Clause. See *Sealfon* v. *United States*, 332 U. S. 575, 578
(1948); *Frank* v. *Mangum*, 237 U. S. 309, 334 (1915) (The principle that
"a question of fact or of law distinctly put in issue and directly deter-
mined by a court of competent jurisdiction cannot afterwards be dis-
puted between the same parties" applies to "the decisions of criminal
courts.").

Our decision in *Ashe* explained that issue preclusion in criminal cases must be applied with "realism and rationality." *Id.*, at 444. To identify what a jury in a previous trial necessarily decided, we instructed, a court must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter." *Ibid.* (quoting Mayers & Yarbrough, *Bis Vexari*: New Trials and Successive Prosecutions, 74 Harv. L. Rev. 1, 38 (1960)). This inquiry, we explained, "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." 397 U. S., at 444 (quoting *Sealfon* v. *United States*, 332 U. S. 575, 579 (1948)). We have also made clear that "[t]he burden is on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided" by a prior jury's verdict of acquittal. *Schiro* v. *Farley*, 510 U. S. 222, 233 (1994) (internal quotation marks omitted); accord *Dowling* v. *United States*, 493 U. S. 342, 350 (1990).

In *United States* v. *Powell*, 469 U. S. 57, we held that a defendant cannot meet this burden when the same jury returns irreconcilably inconsistent verdicts on the question she seeks to shield from reconsideration. *Powell*'s starting point was our holding in *Dunn* v. *United States*, 284 U. S. 390 (1932), that a criminal defendant may not attack a jury's finding of guilt on one count as inconsistent with the jury's verdict of acquittal on another count. *Powell*, 469 U. S., at 58–59. The Court's opinion in *Dunn* stated no exceptions to this rule, and after *Dunn* the Court had several times "alluded to [the] rule as an established principle," 469 U. S*.,* at 63. Nevertheless, several Courts of Appeals had "recogniz[ed] exceptions to the rule," *id.,* at 62, and Powell sought an exception for the verdicts of guilt she faced.

At trial, a jury had acquitted Powell of various substantive drug charges but convicted her of using a telephone in "causing and facilitating" those same offenses. *Id.*, at 59–

60. She appealed, arguing that "the verdicts were inconsistent, and that she therefore was entitled to reversal of the telephone facilitation convictions." *Id.,* at 60. Issue preclusion, she maintained, barred "acceptance of [the] guilty verdict[s]" on the auxiliary offenses because the same jury had acquitted her of the predicate felonies. *Id.,* at 64.

Rejecting Powell's argument, we noted that issue preclusion is "predicated on the assumption that the jury acted rationally." *Id.,* at 68. When a jury returns irreconcilably inconsistent verdicts, we said, one can glean no more than that "either in the acquittal or the conviction the jury did not speak their real conclusions." *Id.,* at 64 (quoting *Dunn*, 284 U. S., at 393). Although it is impossible to discern which verdict the jurors arrived at rationally, we observed, "that does not show that they were not convinced of the defendant's guilt." *Powell*, 469 U. S., at 64–65 (quoting *Dunn*, 284 U. S., at 393). In the event of inconsistent verdicts, we pointed out, it is just as likely that "the jury, convinced of guilt, properly reached its conclusion on [one count], and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the [related] offense." *Powell*, 469 U. S., at 65. Because a court would be at a loss to know which verdict the jury "really meant," we reasoned, principles of issue preclusion are not useful, for they are "predicated on the assumption that the jury acted rationally and found certain facts in reaching its verdict." *Id.,* at 68. Holding that the acquittals had no preclusive effect on the counts of conviction, we reaffirmed *Dunn*'s rule, under which both Powell's convictions and her acquittals, albeit inconsistent, remained undisturbed. 469 U. S.*,* at 69.

Finally, in *Yeager* v. *United States*, 557 U. S. 110 (2009), we clarified that *Powell*'s holding on inconsistent verdicts does not extend to an apparent inconsistency between a jury's verdict of acquittal on one count and its inability to

reach a verdict on another count. See 557 U. S., at 124
("[I]nconsistent *verdicts*" present an "entirely different
context" than one involving "both *verdicts* and seemingly
inconsistent *hung counts*."). Yeager was tried on charges
of fraud and insider trading. *Id.*, at 114. The jury acquit-
ted him of the fraud offenses, which the Court of Appeals
concluded must have reflected a finding that he "did not
have any insider information that contradicted what was
presented to the public." *Id.*, at 116. Yet the jury failed to
reach a verdict on the insider-trading charges, as to which
"the possession of insider information was [likewise] a
critical issue of ultimate fact." *Id.,* at 123. Arguing that
the jury had therefore acted inconsistently, the Govern-
ment sought to retry Yeager on the hung counts. We ruled
that retrial was barred by the Double Jeopardy Clause.

A jury "speaks only through its verdict," we noted. *Id.*,
at 121. Any number of reasons—including confusion
about the issues and sheer exhaustion, we observed—
could cause a jury to hang. *Ibid.* Accordingly, we said,
only "a jury's decisions, not its failures to decide," identify
"what a jury necessarily determined at trial." *Id.*, at 122.
Because a hung count reveals nothing more than a jury's
failure to reach a decision, we further reasoned, it supplies
no evidence of the jury's irrationality. *Id.*, at 124–125.
Hung counts, we therefore held, "ha[ve] no place in the
issue-preclusion analysis," *id.,* at 122: When a jury acquits
on one count while failing to reach a verdict on another
count concerning the same issue of ultimate fact, the
acquittal, and only the acquittal, counts for preclusion
purposes. Given the preclusive effect of the acquittal, the
Court concluded, Yeager could not be retried on the hung
count. *Id.*, at 122–125.

C

With our controlling precedent in view, we turn to the
inconsistent verdicts rendered in this case. The prosecu-

tion stemmed from an alleged bribe paid by petitioner Juan Bravo-Fernandez (Bravo), an entrepreneur, to petitioner Hector Martínez-Maldonado (Martínez), then a senator serving the Commonwealth of Puerto Rico. The alleged bribe took the form of an all-expenses-paid trip to Las Vegas, including a $1,000 seat at a professional boxing match featuring a popular Puerto Rican contender. *United States* v. *Fernandez*, 722 F. 3d 1, 6 (CA1 2013). According to the Government, Bravo intended the bribe to secure Martínez' help in shepherding legislation through the Puerto Rico Senate that, if enacted, would "provid[e] substantial financial benefits" to Bravo's enterprise. *Ibid.* In the leadup to the Las Vegas trip, Martínez submitted the legislation for the Senate's consideration and issued a committee report supporting it; within a week of returning from Las Vegas, Martínez issued another favorable report and voted to enact the legislation. *Id.*, at 6–7.

Based on these events, a federal grand jury in Puerto Rico indicted petitioners for, *inter alia*, federal-program bribery, in violation of 18 U. S. C. §666; conspiracy to violate §666, in violation of §371; and traveling in interstate commerce to further violations of §666, in violation of the Travel Act, §1952(a)(3)(A).[3]   Following a three-week trial, a jury convicted Bravo and Martínez of the standalone §666 bribery offense, but acquitted them of the related conspiracy and Travel Act charges. *Fernandez*, 722 F. 3d, at 7. Each received a sentence of 48 months in prison. *Id.*, at 8.

The Court of Appeals for the First Circuit vacated the §666 convictions for instructional error. *Id.,* at 27. In the First Circuit's view, the jury had been erroneously charged on what constitutes criminal conduct under that statute. *Id.*, at 22–27. The charge permitted the jury to find Bravo

———————

[3] Petitioners were indicted on several other charges not relevant here. See *United States* v. *Fernandez*, 722 F. 3d 1, 7 (CA1 2013).

and Martínez "guilty of offering and receiving a gratuity," *id.*, at 16, but, the appeals court held, §666 proscribes only *quid pro quo* bribes, and not gratuities, *id.*, at 6, 22.[4] True, the court acknowledged, the jury was instructed on both theories of bribery, and the evidence at trial sufficed to support a guilty verdict on either theory. *Id.*, at 19–20. But the Court of Appeals could not say with confidence that the erroneous charge was harmless, so it vacated the §666 convictions and remanded for further proceedings. *Id.*, at 27, 39.

On remand, relying on the issue-preclusion component of the Double Jeopardy Clause, Bravo and Martínez moved for judgments of acquittal on the standalone §666 charges. 988 F. Supp. 2d 191 (PR 2013). They could not be retried on the bribery offense, they insisted, because the jury necessarily determined that they were not guilty of violating §666 when it acquitted them of conspiring to violate §666 and traveling in interstate commerce to further violations of §666. *Id.,* at 193. That was so, petitioners maintained, because the only contested issue at trial was whether Bravo had offered, and Martínez had accepted, a bribe within the meaning of §666. *Id.*, at 196; see Tr. of Oral Arg. 4 ("There was no dispute that they agreed to go to a boxing match together"; nor was there any dispute "that to get to Las Vegas from Puerto Rico, you have to travel" across state lines.). The District Court denied the motions for acquittal. 988 F. Supp. 2d, at 196–198. If the sole issue disputed at trial was whether Bravo and Martínez had violated §666, the court explained, then "the jury

──────────

[4]As the First Circuit acknowledged, this holding is contrary to the rulings of "most circuits to have addressed th[e] issue." *Id.*, at 6. Three other Federal Courts of Appeals have considered the question; each has held that §666 prohibits gratuities as well as *quid pro quo* bribes. See *United States* v. *Bahel*, 662 F. 3d 610, 636 (CA2 2011); *United States* v. *Hawkins*, 777 F. 3d 880, 881 (CA7 2015); *United States* v. *Zimmerman*, 509 F. 3d 920, 927 (CA8 2007).

[had] acted irrationally." *Id.*, at 196. Because the same jury had simultaneously *convicted* Bravo and Martínez on the standalone §666 charges, "the verdict simply was inconsistent." *Ibid.*

The First Circuit affirmed the denial of petitioners' motions for acquittal, agreeing that the jury's inconsistent returns were fatal to petitioners' issue-preclusion plea. 790 F. 3d 41. The jury received the same bribery instructions for each count involving §666, the court noted, so the §666-based verdicts—convicting on the standalone bribery charges but acquitting on the related Travel Act and conspiracy counts—could not be reconciled. *Id.*, at 54–55.[5]

The Court of Appeals rejected petitioners' argument that the eventual invalidation of the bribery convictions rendered *Powell*'s inconsistent-verdicts rule inapplicable. *Ashe*, the court reminded, calls for a practical appraisal based on the complete record of the prior proceeding; the §666 bribery convictions, like the §666-based acquittals, were part of that record. See 790 F. 3d, at 50. Nor are vacated convictions like hung counts for issue-preclusion purposes, the court continued. Informed by our decision in *Yeager*, the First Circuit recognized that a hung count reveals only a jury's failure to decide, and therefore cannot evidence actual inconsistency with a jury's decision. 790 F. 3d, at 50–51. In contrast, the court said, vacated convictions "*are* jury decisions, through which the jury *has* spoken." *Id.*, at 51. The later upset of a conviction on an unrelated ground, the court reasoned, does not undermine *Powell*'s recognition that "inconsistent verdicts make it

_____

[5] As just observed, see *supra,* at 10, petitioners urge that §666 bribery was the sole issue in controversy, and that there was no dispute on other elements of the Travel Act and conspiracy counts. See Tr. of Oral Arg. 4. See also Brief for United States 13 (accepting that the jury "returned irreconcilably inconsistent verdicts"). If another element could explain the acquittals, then there would be no inconsistency and no argument against a new trial on bribery. See *infra*, at 12–13.

impossible to determine what a jury necessarily decided." 790 F. 3d, at 51. The First Circuit therefore concluded that "vacated convictions, unlike hung counts, are relevant to the *Ashe* [issue-preclusion] inquiry." *Ibid.*

We granted certiorari to resolve a conflict among courts on this question: Does the issue-preclusion component of the Double Jeopardy Clause bar the Government from retrying defendants, like Bravo and Martínez, after a jury has returned irreconcilably inconsistent verdicts of conviction and acquittal, and the convictions are later vacated for legal error unrelated to the inconsistency?[6] 557 U. S. ___ (2016). Holding that the Double Jeopardy Clause does not bar retrial in these circumstances, we affirm the First Circuit's judgment.

## II

When a conviction is overturned on appeal, "[t]he general rule is that the [Double Jeopardy] Clause does not bar reprosecution." *Justices of Boston Municipal Court* v. *Lydon*, 466 U. S. 294, 308 (1984). The ordinary consequence of vacatur, if the Government so elects, is a new trial shorn of the error that infected the first trial. This

---

[6] Compare *United States* v. *Citron*, 853 F. 2d 1055, 1058–1061 (CA2 1988) (holding that retrial does not violate Double Jeopardy Clause under these circumstances); *United States* v. *Price*, 750 F. 2d 363, 366 (CA5 1985) (same); *Evans* v. *United States*, 987 A. 2d 1138, 1141–1142 (D. C. 2010) (same); and *State* v. *Kelly*, 201 N. J. 471, 493–494, 992 A. 2d 776, 789 (2010) (same), with *People* v. *Wilson*, 496 Mich. 91, 105–107, 852 N. W. 2d 134, 141–142 (2014) (holding that Double Jeopardy Clause bars retrial in this situation). As the First Circuit explained, "[a]lthough *Citron* and *Price* predate *Yeager*, both the Second and Fifth Circuits decided that vacated counts are relevant to the *Ashe* analysis at a time when those circuits had already ruled that hung counts should be disregarded for purposes of the *Ashe* inquiry." 790 F. 3d 41, 51, n. 7 (2015) (citing *United States* v. *Mespoulede*, 597 F. 2d 329, 332, 335–336 (CA2 1979); *United States* v. *Nelson*, 599 F. 2d 714, 716–717 (CA5 1979)). The Second Circuit, moreover, has adhered to *Citron* since *Yeager*. See *United States* v. *Bruno*, 531 Fed. Appx. 47, 49 (2013).

"continuing jeopardy" rule neither gives effect to the vacated judgment nor offends double jeopardy principles. Rather, it reflects the reality that the "criminal proceedings against an accused have not run their full course." *Ibid.* And by permitting a new trial post vacatur, the continuing-jeopardy rule serves both society's and criminal defendants' interests in the fair administration of justice. "It would be a high price indeed for society to pay," we have recognized, "were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." *United States* v. *Tateo*, 377 U. S. 463, 466 (1964). And the rights of criminal defendants would suffer too, for "it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution." *Ibid.*

Bravo and Martínez ask us to deviate from the general rule that, post vacatur of a conviction, a new trial is in order. When a conviction is vacated on appeal, they maintain, an acquittal verdict simultaneously returned should preclude the Government from retrying the defendant on the vacated count. Our precedent, harmonious with issue-preclusion doctrine, opposes the foreclosure petitioners seek.

## A

Bravo and Martínez bear the burden of demonstrating that the jury necessarily resolved in their favor the question whether they violated §666. *Schiro*, 510 U. S., at 233. But, as we have explained, see *supra,* at 7, a defendant cannot meet that burden where the trial yielded incompatible jury verdicts on the issue the defendant seeks to insulate from relitigation. Here, the jury convicted Bravo and Martínez of violating §666 but acquitted them of

conspiring, and traveling with the intent, to violate §666. The convictions and acquittals are irreconcilable because other elements of the Travel Act and conspiracy counts were not disputed. See *supra,* at 10–11, and n. 5. It is unknowable "which of the inconsistent verdicts—the acquittal[s] or the conviction[s]—'the jury really meant.'" 790 F. 3d, at 47 (quoting *Powell*, 469 U. S., at 68); see Restatement §29, Comment *f*, at 295 ("Where a determination relied on as preclusive is itself inconsistent with some other adjudication of the same issue, . . . confidence [in that determination] is generally unwarranted."). In view of the Government's inability to obtain review of the acquittals, *Powell*, 469 U. S., at 68, the inconsistent jury findings weigh heavily against according those acquittals issue-preclusive effect. See *Standefer*, 447 U. S., at 23, n. 17.

That petitioners' bribery convictions were later vacated for trial error does not alter our analysis. The critical inquiry is whether the jury actually decided that Bravo and Martínez did not violate §666. *Ashe* counsels us to approach that task with "realism and rationality," 397 U. S., at 444, in particular, to examine the trial record "with an eye to all the circumstances of the proceedings," *ibid.* As the Court of Appeals explained, "the fact [that] the jury . . . convicted [Bravo and Martínez] of violating §666 would seem to be of quite obvious relevance" to this practical inquiry, "even though the convictions were later vacated." 790 F. 3d, at 50. Because issue preclusion "depends on the jury's assessment of the facts in light of the charges as presented at trial," a conviction overturned on appeal is "appropriately considered in our assessment of [an acquittal] verdict's preclusive effect." *United States* v. *Citron*, 853 F. 2d 1055, 1061 (CA2 1988). Indeed, the jurors in this case might not have acquitted on the Travel Act and conspiracy counts absent their belief that the §666 bribery convictions would stand. See *ibid.*

Bravo and Martínez could not be retried on the bribery counts, of course, if the Court of Appeals had vacated their §666 convictions because there was insufficient evidence to support those convictions. For double jeopardy purposes, a court's evaluation of the evidence as insufficient to convict is equivalent to an acquittal and therefore bars a second prosecution for the same offense. See *Burks* v. *United States*, 437 U. S. 1, 10–11 (1978); cf. *Powell*, 469 U. S., at 67 (noting that defendants are "afforded protection against jury irrationality or error by [courts'] independent review of the sufficiency of the evidence"). But this is scarcely a case in which the prosecution "failed to muster" sufficient evidence in the first proceeding. *Burks*, 437 U. S., at 11. Quite the opposite. The evidence presented at petitioners' trial, the Court of Appeals determined, supported a guilty verdict on the gratuity theory (which the First Circuit ruled impermissible) *as well as* the *quid pro quo* theory (which the First Circuit approved). 790 F. 3d, at 44. Vacatur was compelled for the sole reason that the First Circuit found the jury charge erroneous to the extent that it encompassed gratuities. See *supra,* at 9–10, and n. 4. Therefore, the general rule of "allowing a new trial to rectify trial error" applied. *Burks*, 437 U. S., at 14 (emphasis deleted).

Nor, as the Government acknowledges, would retrial be tolerable if the trial error could resolve the apparent inconsistency in the jury's verdicts. See Brief for United States 30 (If, for example, "a jury receives an erroneous instruction on the count of conviction but the correct instruction on the charge on which it acquits, the instructional error may reconcile the verdicts."). But the instructional error here cannot account for the jury's contradictory determinations because the error applied equally to every §666-related count. See *supra,* at 11.

As in *Powell*, so in this case, "[t]he problem is that the same jury reached inconsistent results." 469 U. S., at 68.

The convictions' later invalidation on an unrelated ground does not erase or reconcile that inconsistency: It does not bear on "the factual determinations actually and necessarily made by the jury," nor does it "serv[e] to turn the jury's otherwise inconsistent and irrational verdict into a consistent and rational verdict." *People* v. *Wilson*, 496 Mich. 91, 125, 852 N. W. 2d 134, 151 (2014) (Markman, J., dissenting). Bravo and Martínez, therefore, cannot establish the factual predicate necessary to preclude the Government from retrying them on the standalone §666 charges—namely, that the jury in the first proceeding actually decided that they did not violate the federal bribery statute.

B

To support their argument for issue preclusion, Bravo and Martínez highlight our decision in *Yeager*. In *Yeager*, they point out, we recognized that hung counts "have never been accorded respect as a matter of law or history." 557 U. S., at 124. That is also true of vacated convictions, they urge, so vacated convictions, like hung counts, should be excluded from the *Ashe* inquiry into what the jury necessarily determined. Brief for Petitioners 20–24. Asserting that we have "never held an invalid conviction . . . relevant to or evidence of anything," Tr. of Oral Arg. 5, Bravo and Martínez argue that taking account of a vacated conviction in our issue-preclusion analysis would impermissibly give effect to "a legal nullity," Brief for Petitioners 39; see *Wilson*, 496 Mich., at 107, 852 N. W. 2d, at 142 (majority opinion) (considering a vacated count would impermissibly "bring that legally vacated conviction back to life").

This argument misapprehends the *Ashe* inquiry. It is undisputed that petitioners' convictions are invalid judgments that may not be used to establish their guilt. The question is whether issue preclusion stops the Govern-

ment from prosecuting them anew. On that question, Bravo and Martínez bear the burden of showing that the issue whether they violated §666 has been "determined by a valid and final judgment of acquittal." *Yeager*, 557 U. S., at 119 (internal quotation marks omitted). To judge whether they carried that burden, a court must realistically examine the record to identify the ground for the §666-based *acquittals. Ashe*, 397 U. S., at 444. A conviction that contradicts those acquittals is plainly relevant to that determination, no less so simply because it is later overturned on appeal for unrelated legal error: The split verdict—finding §666 violated on the standalone counts, but not violated on the related Travel Act and conspiracy counts—tells us that, on one count or the other, "the jury [did] not follo[w] the court's instructions," whether because of "mistake, compromise, or lenity." *Powell*, 469 U. S., at 65; see *supra,* at 7. Petitioners' acquittals therefore do not support the application of issue preclusion here.[7]

Further relying on *Yeager*, Bravo and Martínez contend that their vacated convictions should be ignored because, as with hung counts, "there is no way to decipher" what they represent. Brief for Petitioners 28 (quoting *Yeager*, 557 U. S., at 121). The §666 convictions are meaningless, they maintain, because the jury was allowed to convict on the basis of conduct not criminal in the First Circuit— payment of a gratuity. Brief for Petitioners 24.

This argument trips on *Yeager*'s reasoning. *Yeager* did

───────────

[7] Nor is this the first time we have looked to a vacated conviction to ascertain what a jury decided in a prior proceeding. Our holding in *Morris* v. *Mathews*, 475 U. S. 237 (1986), that a conviction vacated on double jeopardy grounds may be "reduced to a conviction for a lesser included offense which is not jeopardy barred," *id.*, at 246–247, rested on exactly that rationale. See *id.*, at 247 (relying on a jeopardy-barred vacated conviction for aggravated murder to conclude that the jury "necessarily found that the defendant's conduct satisfie[d] the elements of the lesser included offense" of simple murder).

not rest on a court's inability to detect the basis for a jury's decision.  Rather, this Court reasoned that, when a jury hangs, there is *no decision*, hence no evidence of irrationality.  557 U. S., at 124–125.  A verdict of guilt, by contrast, *is* a jury decision, even if subsequently vacated on appeal.  It therefore can evince irrationality.

That is the case here.  Petitioners do not dispute that the Government's evidence at trial supported a guilty verdict on the *quid pro quo* theory, or that the gratuity instruction held erroneous by the Court of Appeals applied to every §666-based offense.  Because no rational jury could have reached conflicting verdicts on those counts, petitioners' §666 convictions "reveal the jury's inconsistency—which is the relevant issue here—even if they do not reveal which theory of liability jurors relied upon in reaching those inconsistent verdicts."  Brief for United States 31.  In other words, because we do not know what the jury would have concluded had there been no instructional error, Brief for Petitioners 28–29, a new trial on the counts of conviction is in order.  Bravo and Martínez have succeeded on appeal to that extent, but they are entitled to no more.  The split verdict does not impede the Government from renewing the prosecution.[8]

––––––––––

[8] A number of lower courts have reached the same conclusion.  See *Citron*, 853 F. 2d, at 1059 (If the defendant "was *convicted* of the offense that is the subject of the retrial," the case is materially different from one with "an acquittal accompanied by a failure to reach a verdict."); *Price*, 750 F. 2d, at 366 (a case in which "the jury returned no verdict of conviction" on the compound count, "but only a verdict of acquittal on the substantive count," is not instructive on whether the Government may retry a defendant after an inconsistent verdict has been vacated); *Evans*, 987 A. 2d, at 1142 ("*Yeager* does nothing to undermine" the conclusion that a defendant may be retried after an inconsistent verdict is overturned.); *Kelly*, 201 N. J., at 494, 992 A. 2d, at 789 (explaining in the context of retrial following vacatur that "*Yeager* has no application to a case . . . involving an inconsistent verdict of acquittals and convictions returned by the same jury").

The Double Jeopardy Clause, as the First Circuit explained, forever bars the Government from again prosecuting Bravo and Martínez on the §666-based conspiracy and Travel Act offenses; "the acquittals themselves remain inviolate." 790 F. 3d, at 51, n. 6. Bravo and Martínez have also gained "the benefit of their appellate victory," *ibid.*: a second trial on the standalone bribery charges, in which the Government may not invoke a gratuity theory. But issue preclusion is not a doctrine they can commandeer when inconsistent verdicts shroud in mystery what the jury necessarily decided.

\* \* \*

For the reasons stated, the judgment of the Court of Appeals for the First Circuit is

*Affirmed.*

# SUPREME COURT OF THE UNITED STATES

───────────

No. 15–537

───────────

## JUAN BRAVO-FERNANDEZ AND HECTOR MARTINEZ-MALDONADO, PETITIONERS *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

[November 29, 2016]

JUSTICE THOMAS, concurring.

The question presented in this case is whether, under *Ashe* v. *Swenson*, 397 U. S. 436 (1970), and *Yeager* v. *United States*, 557 U. S. 110 (2009), a vacated conviction can nullify the preclusive effect of an acquittal under the issue-preclusion prong of the Double Jeopardy Clause.

As originally understood, the Double Jeopardy Clause does not have an issue-preclusion prong. "The English common-law pleas of *auterfoits acquit* and *auterfoits convict,* on which the Clause was based, barred only repeated 'prosecution for the same identical act *and* crime.'" *Id.,* at 128 (Scalia, J., dissenting) (quoting 4 W. Blackstone, Commentaries on the Laws of England 330 (1769); emphasis added by dissent); see also *Grady* v. *Corbin,* 495 U. S. 508, 530–535 (1990) (Scalia, J., dissenting). But "[i]n *Ashe* the Court departed from the original meaning of the Double Jeopardy Clause, holding that it precludes successive prosecutions on distinct crimes when facts essential to conviction of the second crime have necessarily been resolved in the defendant's favor by a verdict of acquittal of the first crime." *Yeager, supra,* at 128 (Scalia, J., dissenting).

In *Yeager*, this Court erroneously and illogically extended *Ashe*. See 557 U. S., at 128–131. *"Ashe* held only that

the Clause sometimes bars successive prosecution of facts found during 'a prior proceeding.'"  *Id.,* at 129 (quoting *Ashe*, *supra*, at 444).  *Yeager*, however, "bar[red] retrial on hung counts after what was not . . . a prior proceeding but simply an earlier stage of the same proceeding."  557 U. S., at 129 (Scalia, J., dissenting).

   In an appropriate case, we should reconsider the holdings of *Ashe* and *Yeager*.  Because the Court today properly declines to extend those cases, and indeed reaches the correct result under the Clause's original meaning, I join its opinion.